**June A. WILSON et al., Plaintiffs,**

**v.**

**ALLIED CHEMICAL CORPORATION et al., Defendants.**

**Civ. A. No. 76–0622–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

July 28, 1978.

Susan G. Moenssens, Moenssens & Moenssens, C. Allen Riggins, Richmond, Va., for plaintiffs.

Jonathan G. Axelrod, Bethesda, Md., Thomas H. Kohn, Arlington, Va., for defendant No. 2.

Hill B. Wellford, Jr., Thomas J. Manley, Thomas J. Flaherty, Hunton & Williams, Ann G. Greever, Richmond, Va., for defendant No. 1.

## MEMORANDUM

MERHIGE, District Judge.

Plaintiffs, females, bring this action against their employer, Allied Chemical Corporation ("Allied"), and their collective bargaining agent, Teamsters Local Union No. 101 ("Union"), alleging discrimination on the basis of their sex. Plaintiffs contend that certain practices of defendant Allied constitute illegal sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, or violate the Equal Pay Act, 29 U.S.C. § 206(d). They further allege that defendant Union's acquiescence in or encouragement of these challenged practices constitutes a breach of the Union's duty of fair representation, 29 U.S.C. § 185. Additionally, plaintiffs claim that the Union has denied them equal rights and privileges within the organization in violation of 29 U.S.C. § 411(a)(1). Finally, plaintiffs assert that each of the aforementioned alleged actions violates the nondiscrimination provisions of the collective bargaining agreement, in violation of 29 U.S.C. § 185. Jurisdiction of these claims is premised on 28 U.S.C. § 1343(3); 29 U.S.C. §§ 185, 412; 42 U.S.C. § 2000e-5.

The matter comes before the Court on certain jurisdictional issues raised in defendants' various motions for summary judgment, and on plaintiffs' amended motion for class action certification.[1]

### I.

In September 1971 this Court entered a consent decree in the case of *Powell v. Allied Chemical Corporation,* CA No. 213–71–R (E.D.Va. Sept. 27, 1971). In that case, black and female employees of Allied's Fibers Division Plant and Technical Center challenged the company's departmental se-

---

1. Several additional motions are pending before the Court. In light of the Court's disposition of the jurisdictional issues and class certi-

fication questions, however, many of these motions are now moot.

niority system, under which persons transferring from one department to another lost accrued seniority, thereby suffering a pay cut, increased vulnerability to lay-offs, inferior shift assignments and other hardships. These plaintiffs alleged that Allied had formerly designated certain departments as "female" or "black"; that jobs in those departments were less desirable, earned less pay and offered less opportunity for advancement; and that the effect of Allied's transfer policies was to "lock in" the effects of this alleged discrimination. In the consent decree, without admitting liability, Allied agreed to abolish departmental seniority, and establish plant-wide seniority instead; and, with respect to blacks hired prior to February 25, 1971 and women hired prior to December 9, 1966, to permit each of these plaintiffs to retain his or her current rate of pay upon transferring to a lower paying job in a new department in which the top wage rate was higher than that in the plaintiff's old department.[2] This latter process was known as "red circling."

Immediately after the settlement of *Powell* was announced, employees who were not beneficiaries of the agreement, allegedly including women, staged a work stoppage, demanding that the red circle privilege be extended to all employees. Allied agreed to those demands.

## II.

Plaintiffs here mount a wide ranging attack on Allied's employment practices and the Union's treatment of women. Defendants assert that the Court does not have jurisdiction of many of plaintiffs' allegations.

### A. UNTIMELY EEOC CHARGES

An aggrieved person must file a complaint with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the employment practice of which he or she complains. 42 U.S.C. § 2000e–5. This requirement is jurisdictional.

Allied vigorously contends that certain of plaintiffs' claims were not timely filed with the EEOC. Allied notes that the agreement to extend red-circle privileges to non-*Powell* class members was announced in September, 1971, but the first EEOC charge by any named plaintiff even remotely related to that agreement was not filed until several years thereafter. Allied also asserts that the plaintiffs' EEOC charge alleging discriminatory promotions was not filed within 180 days of the last promotion of which plaintiffs complain.

■ When a Title VII complainant alleges a continuing course of discriminatory conduct rather than an isolated discriminatory act, charges filed with the Commission at any time during the continuation of the alleged practice are considered timely. *E. g., Wetzel v. Liberty Mutual Insurance Co.,* 508 F.2d 239 (3d Cir.), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Pacific Maritime Assn. v. Quinn,* 491 F.2d 1294 (9th Cir. 1974); *Macklin v. Spector Freight Systems,* 156 U.S.App.D.C. 69, 478 F.2d 979 (1973); *Belt v. Johnson Motor Lines,* 458 F.2d 443 (5th Cir. 1972). However, the Supreme Court held in *United Airlines Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), that the mere allegation of continuing *effects* of a past act of discrimination is insufficient to constitute a continuing *violation* so as to satisfy the timely filing requirement of Title VII.

In *Evans,* a female flight attendant who failed to file a timely EEOC charge after her employment was terminated in 1968 for discriminatory reasons was rehired in 1972. She alleged that United's refusal to credit her with predischarge seniority upon her reemployment constituted a continuing violation of Title VII. The Supreme Court of the United States in its majority opinion stated:

> Respondent is correct in pointing out that the seniority system gives present effect to a past act of discrimination. But Unit-

---

**2.** Back pay and attorneys' fees were also awarded by the consent decree.

ed was entitled to treat that past act as lawful after respondent failed to file a charge of discrimination within the 90 days then allowed by § 706(d). A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, it is merely an unfortunate event in history which has no present legal consequences.

Respondent emphasizes the fact that she has alleged a *continuing* violation. . . But the emphasis should not be placed on mere continuity; the critical question is whether any present *violation* exists. 431 U.S. at 558, 97 S.Ct. at 1889 (emphasis in original).

■ Plaintiffs here contend that the consequences of Allied's decision to extend red circle privileges to non-*Powell* class members continue at present. They allege, for example, that non-*Powell* class members who red-circled into the Quality Control Department continue to receive superior shift assignments, preferred vacation times, etc., as a result of their greater seniority, which they would not receive but for the extension of red-circle privileges. It is clear that the gravamen of plaintiffs' complaint thus is Allied's 1971 decision to restructure its seniority system and permit non-*Powell* class members to transfer departments without suffering a cut in pay. Since that decision was not the subject of a timely EEOC charge, all of plaintiffs' claims against Allied and the Union which are derived from that decision are time-barred and must be dismissed.

■ Allied additionally contends that plaintiffs' allegations of discriminatory promotions are untimely. Here, however, plaintiffs allege continuing *violations*, not just continuing results of past violations. The Court concludes that plaintiff Collins' allegations of a pattern of discrimination in promotions were timely filed with the EEOC.

## B.  TIMELY COMPLAINT

■ Allied argues that plaintiff Collins has not filed suit within ninety days of the receipt of a right-to-sue letter from the EEOC, as required by 42 U.S.C. § 2000e–5(f)(1). Collins, on the other hand, explains that she wrote, through her attorney, to the EEOC in November, 1976, requesting that a notice of right-to-sue be issued. The EEOC replied that such notice had already been issued. Within one month of her receipt of the EEOC's reply, Collins filed the instant action, stating in her complaint that she had not received such notice. Subsequently, according to plaintiff, the EEOC discovered that it had never, in fact, sent the requisite notice, and on March 31, 1977, the Commission issued plaintiff a right-to-sue letter.

The Court is of the opinion that, under the facts alleged, plaintiff Collins has complied with both the spirit and intent of § 2000e–5. It would be manifestly unjust to hold Collins responsible for the Commission's negligence, or to require her now to refile her suit simply because the instant suit was filed prior to receipt of the notice.

## C.  SCOPE OF THE EEOC CHARGES

Allied contends that many of plaintiffs' allegations have not previously been raised in charges before the EEOC, and therefore cannot be considered by the Court. A major purpose of Title VII is to promote voluntary compliance with the law by encouraging the amicable settlement of civil rights disputes. Toward this end, the Act requires that an aggrieved party file charges with the EEOC prior to bringing suit in federal court, to the end that the Commission might attempt to mediate between the parties.

It is recognized, however, that EEOC charges are generally filed by lay persons. As such, they are often "limited in scope, contemplating only particularized allegations which do not go to underlying discriminatory causes or policies." *Scott v. University of Delaware*, 385 F.Supp. 937 (D.Del.

1974). Given these considerations, the United States Court of Appeals for the Fifth Circuit has held that the allowable scope of a law suit is not defined by the specific allegations in the EEOC charge, but rather by "the 'scope' of the EEOC investigation which can reasonably be expected to grow out of [that charge]." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970). *Accord, King v. Seaboard Coast Line Railroad*, 538 F.2d 581 (4th Cir. 1976). *Cf. EEOC v. General Electric Co.*, 532 F.2d 359 (4th Cir. 1976). A plaintiff may seek redress through the Court of any claims which are "like" or "related" to those raised in the EEOC charge. *EEOC v. General Electric Co., supra.*

The scope of an EEOC charge is to be liberally construed. *Danner v. Phillips Petroleum Co.*, 447 F.2d 159 (5th Cir. 1971). For example, a class action is permissible even though only one member of the class has presented the grievance to the Commission. *Oatis v. Crown Zellerbach Corp.*, 398 F.2d 496 (5th Cir. 1968). Nonetheless, a Title VII complaint cannot be based upon new allegations wholly unlike those presented to or considered by the EEOC.

Turning to Allied's specific contentions concerning plaintiffs' remaining allegations, the Court concludes:

■ (a) Plaintiff Collins' charge filed May 19, 1972 regarding discriminatory promotions is sufficient to permit a class suit alleging a pattern or practice of discrimination in promotions;

■ (b) No plaintiff has raised any claim before the EEOC even remotely similar to their instant allegations of harassment. Accordingly, the Court does not have jurisdiction over such allegations.

### D. SCOPE OF CLASS

■ Plaintiffs here seek to represent the class of persons defined as follows:

All female persons who are now employed, who have in the past been employed since November 21, 1971,[3] and who

in the future will be employed by defendant Allied Chemical Corporation at its Chesterfield Fiber Plant and Technical Center at the Walthall site.

Rule 23(a), Federal Rules of Civil Procedure, provides that:

One or more members of a class may sue . . . as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims . . . of the representative parties are typical of the claims . . . of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Defendants raise numerous substantive and procedural objections to certification of the plaintiff class as heretofore described. The Court here addresses only those issues relevant to the inquiries mandated by Rule 23. An attack upon the merits of plaintiffs' claims is not a proper response to a motion for class action certification. *See Doctor v. Seaboard Coast Line Railroad Co.*, 540 F.2d 669 (4th Cir. 1976); Wright and Miller, 7 *Fed.Prac. & Proced.*: Civil § 1751 and n.81 § 1751.

■ Generally, an across the board attack on unequal employment practices allegedly committed pursuant to a policy of discrimination raises issues which are common to all members of the class, and in which all class members have a common interest, so that class certification would be appropriate. Nevertheless, the Court must carefully scrutinize the claims set forth in the plaintiffs' complaint to determine whether, in fact, the requisite numerosity, commonality, typicality, and adequacy of representation exist. *East Texas Motor Freight v. Rodriquez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

In *Doctor v. Seaboard Coast Line Railroad Co., supra*, 540 F.2d at 708–09, the United States Court of Appeals for the Fourth Circuit held that in considering

---

**3.** The parties agree that the class should not include any person whose employment termi-

nated more than 180 days prior to the filing of the earliest charge on any issue with the EEOC.

whether an action may be maintained on behalf of a class, a trial court should:

> identify the character or type (*but not the merits*) of each [named] plaintiffs' claim and then . . . determine whether there [is] a class to which such . . . [is] typical, sufficiently numerous to justify class certification. [Emphasis in original].

To this end, the Court has examined plaintiffs' answers to interrogatories and affidavits to flesh out the skeleton of their complaint. *Roman v. E. S. B., Inc.*, 550 F.2d 1343, 1349 (4th Cir. 1976).

The Court concludes that many of the remaining claims raised by plaintiffs are not typical of those of the entire class plaintiffs seek to represent, although some of these are typical of a definable *subclass* of Allied's female employees. Additionally, the Court concludes that plaintiffs do not have standing to raise several of the claims they seek to prosecute on behalf of the proposed class. Specifically, the Court concludes as follows: [4]

■ 1. The claims of plaintiffs Melton, Crowder, Heretick and Jarrett ("Spinerette plaintiffs") that certain predominantly female job categories were established or are maintained in order to pay women a discriminatory wage is typical only of those *women presently or formerly employed* in any such position. On the record currently before the Court, it is not possible to determine whether the numerosity requirement of Rule 23 is met. Since plaintiffs have the burden of proof on this issue, class certification of this allegation must be denied;

2. The claims of the "Spinerette plaintiffs" against the Union regarding the negotiation of discriminatory job classifications and wages are typical of all females referred to in paragraph 1 above, and in light of the lack of numerosity, class certification of this allegation must be denied;

■ 3. The claims of all named plaintiffs against the Union, alleging a pattern of failure to process grievances on account of sex, and failure to accord females their full rights and privileges of Union membership, are typical of all past and present [5] female employees in the proposed class.[6]

4. The claims of each named plaintiff regarding alleged discrimination in promotions are typical of all past and present female employees. *See Barnett v. W. T. Grant Co., supra*, 518 F.2d 543 (4th Cir. 1973);

■ 5. As defendants so aptly point out in their briefs, the claims relating to layoff and termination policies cannot be prosecuted by any of the instant plaintiffs, either on their own behalf or on behalf of the proposed class. Plaintiffs do not allege any injury personal to them as a result of these alleged policies and therefore do not satisfy the standing requirement of Article III of the Constitution. The lack of a representative who has been personally ag-

---

4. In light of the Court's disposition of the jurisdictional issues with regard to plaintiffs' redcircle claims, the Court need not address Allied's contention concerning the certification of a class based on these claims.

5. Plaintiffs seek to represent female future employees as well. While the Court has previously permitted class actions on behalf of future employees, e. g., *Brown v. Schlesinger*, CA No. 74–202–R (E.D.Va.1974), the Court now concludes that such representation is unnecessary, at least in the instant case. While certain of the claims of the named plaintiffs may be typical of the class of female future employees, they will not be included in the class because:

> If they were includable, then an unfavorable disposition of the litigation would bind them and prevent redress of discrimination not yet inflicted. If they are not includable, however, injunctive relief, if granted, would inure to their benefit.

*Harvey v. Stein Printing Co.* 9 F.E.P. case 88 (N.D.Ga.1973). *Accord. Moore v. Western Pa. Water Co.*, 14 F.E.P. cases 414, 416–17 (W.D. Pa.1976).

6. The Union urges that a claim of failure to process a grievance is the kind of purely personal claim not suited to class treatment. The Court cannot agree. While different facts and circumstances are involved in each grievance decision, an allegation that each challenged decision is part of a pervasive pattern of discrimination is sufficient to satisfy the commonality requirement of Rule 23(a). *See Barnett v. W. T. Grant Co.*, 518 F.2d 543 (4th Cir. 1973).

grieved precludes the Court's consideration of class claims relating to layoff and termination policies. *See Doctor v. Seaboard Coast Line Railroad Co.*, 540 F.2d at 711, wherein the United States Court of Appeals for the Fourth Circuit stated, "to support a class action which puts in issue [a particular claim], there must be a representative party who has been *personally aggrieved.*" (Emphasis in original.)

Moreover, as the instant record reflects that none of the named plaintiffs has been laid off or terminated, plaintiffs do not satisfy Rule 23's requirement of adequate representation. In *East Texas Motor Freight System v. Rodriquez*, 431 U.S. at 403, 97 S.Ct. at 1896, the Supreme Court held that "a class representative must be part of the class and 'possess the same interest and suffer the same injury' as class members." (Citations omitted.) It would appear that there is an inherent conflict of interest between the named plaintiffs and those female former employees who have suffered from discriminatory layoffs or terminations, as to appropriate remedy for this alleged discrimination. While all females might benefit from declaratory and injunctive relief, reinstatement of the victims of these alleged policies would obviously be at the expense of present female employees, whom plaintiffs also seek to represent.[7]

6. It follows, therefore, that for the reasons stated in the preceding paragraph, none of the named plaintiffs may prosecute the claims relating to discriminatory hiring, training or transfers. There is no allegation that any of the named plaintiffs suffered any personal aggrievement as a result of these alleged discriminatory policies.

■ 7. Plaintiffs' allegations regarding "male only" jobs cannot be prosecuted on behalf of the class or of the named plaintiffs individually as no plaintiff alleges that she has applied for and been denied such a job, or that she has been deterred from so applying by virtue of the alleged discrimination. *See International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Accordingly, plaintiffs fail to allege any injury personal to any one of them in this regard, and have no standing to litigate this claim.

■ Finally, the Court holds that there is insufficient commonality of issues between the class claims referred to in paragraphs 3 and 4 above to warrant their joinder in one trial. The record reflects that there is no issue of law or fact common to these grievances except plaintiffs' allegation that each challenged action is part of a pervasive pattern of discrimination against females. The Court concludes therefore that neither judicial economy nor fairness to the litigants would be furthered by permitting the maintenance of these diverse claims in a single action.

An appropriate order will issue.[8]

---

7. The Court notes that plaintiffs' complaint fails to seek reinstatement of terminated employees. This fact in itself leads the Court to question the zeal with which the named plaintiffs would represent the interest of former employees on the issue of termination and layoff policies.

8. The earliest date on which any named plaintiff filed a charge concerning discriminatory promotions seems to be plaintiff Collins' charge filed on May 19, 1972. The class which plaintiffs may represent on this allegation is thus all female employees at the Walthall site since November 21, 1971.

The earliest date on which any named plaintiff filed a charge concerning the Union's alleged discrimination against women seems also to be plaintiff Collins' charge filed on May 25, 1973. The class which plaintiffs may represent on this allegation thus includes all females employed at the Walthall site since November 26, 1972.