**Hazel TUFT, Plaintiff-Appellant,**

v.

**McDONNELL DOUGLAS CORPORATION,**
**Defendant-Appellee.**

**No. 77–1703.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1978.

Decided Aug. 11, 1978.

---

Louis Gilden, St. Louis, Mo., for plaintiff-appellant.

Thomas C. Walsh (on brief) of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., argued, for defendant-appellee; Hollye E. Stolz, St. Louis, Mo., on brief.

Before BRIGHT and HENLEY, Circuit Judges, and TALBOT SMITH,* Senior District Judge.

TALBOT SMITH, Senior District Judge.

Plaintiff, Hazel Tuft, an employee of defendant, brought this action against her employer, McDonnell Douglas Corporation (McDonnell Douglas), alleging that defendant has discriminated against her, in its employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.[1] A second count, based on the same alleged discrimination, was filed as a class action.

After a pretrial class hearing, the district court denied certification of the suit as a

---

* TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation.

1. 42 U.S.C. § 2000e–2 provides, in pertinent part, that:

   (a) It shall be an unlawful employment practice for an employer—

   (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

class action. Trial on the merits followed after which the court held that plaintiff had failed to make a prima facie case of discrimination against her, as claimed, on the basis of sex. We affirm the decision on the merits and find, as well, that the district court did not abuse its discretion in refusing to certify this case as a class action.

In her suit and on this appeal plaintiff claims that she suffered discrimination on the basis of sex in three ways: in her layoff from employment, in her failure to be transferred to other work, and in her denial of overtime work. In addition she complains of the trial court's refusal to certify this case as a class action. The district judge found on each claim that she had failed to establish a prima facie case of discrimination. She contends that the district court's findings were clearly erroneous and that his finding on the class action was an abuse of discretion.

■ It is the plaintiff's burden, in a Title VII case, to establish a prima facie case of discrimination, before the burden of proof shifts to the defendant to show valid reasons for its actions. *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "The central focus of the inquiry in a case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex or national origin'." [2] The showing necessary will, of course, vary with the facts of the case.

The basic underlying facts of this case, like its predecessor, *Tuft v. McDonnell Douglas Corp.*,[3] are relatively uncomplicated. The plaintiff was employed by McDonnell as a Draftsman A.[4] Her performance was rated as good by her "lead person" from 1970 to February 1971. She was laid off in July of 1971, then re-employed in May of 1972 by McDonnell and is still there employed. The layoffs, of which hers was but one, were plant wide. They commenced in 1971 and continued through 1975, and were not the result of a weeding out of the inept or incompetent workers, but rather were due to depressed business conditions in the aircraft industry. Two major projects were being completed and an overall reduction in the work force was necessary. The reduction in plaintiff's Department 352 was from 800 in 1970 to 541 in 1971 and 380 in 1972. The number of males classified as draftsmen in the department decreased from 50 in 1969 to 35 in 1971, 12 in 1972, and 0 in 1975. The number of females classified as draftsmen in the department decreased from 2 in 1970 to 0 in 1973. No new draftsmen were hired during this reduction period.[5]

The layoffs made resulted from a survey of the requirements of the job projects, and, among other factors, a determination of who was the least valuable to their current work load in view of the requirements of each of the projects. The employee's versatility and work load were considered, as well as attitude, experience, educational level and position on what was termed the "totem pole." This was a managerial device ranking employees, regardless of job classifications, that was used primarily to determine employees' relative ratings for pay purposes. The plaintiff makes much of the fact that some employees below her on the "totem pole," who were not Draftsmen A, were retained while she was laid off.

2. *Furnco Construction Corp. v. Waters*, —— U.S. ——, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978) (No. 77–369) (citing *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n.15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

3. 517 F.2d 1301 (8th Cir. 1975) (relating to EEOC procedure), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 782, 46 L.Ed.2d 641 (1976).

4. This classification is superior to Draftsman B and C.

5. From July 1971, when plaintiff was laid off, through 1976 three draftsmen were reinstated in Department 352. McDonnell represents that these were returning veterans whom it was obligated, by the Military Training and Service Act, to reinstate and hence jobs were created for them.

The difficulty with assigning this factor controlling weight, or even any substantial weight, in the layoff situation arises from the fact that during this entire period the management was attempting to keep a balanced work force together. To this end employees from each job classification were laid off each month despite their "totem pole" standings. Thus some design engineers who ranked high on the department's "totem pole" were laid off while some Draftsmen C were retained. It was regarded as unwise to eliminate either all of a top or all of a bottom classification at one time. Rather, a mix was sought so as to maintain a balanced work force.

The record clearly shows that defendant's general policy was to transfer personnel rather than lay them off. The defendant sought to transfer the plaintiff prior to her layoff to another job, which she accepted, but a budget cut prevented that transfer from taking place. After her layoff plaintiff was in fact re-employed by McDonnell in another job. Such considerations bring sharply to mind the pertinent observation of Mr. Justice Stevens to the effect that "[f]requently the most probative evidence of intent will be objective evidence of what actually happened rather than evidence describing the subjective state of mind of the actor."[6] Such conduct, on the part of the defendant, following plaintiff's layoff is not consistent with a charge of sex discrimination, but rather the contrary.

Finally, plaintiff charges that she was denied opportunities to work overtime because of her sex. It was her testimony that although commencing with her initial employment she was given overtime work, she had had no such work in 1970 or 1971, despite her request therefor, although a few men allegedly less qualified, were so assigned. It was brought out on her cross-examination, however, that "[t]he assignments I was working on did not require overtime."[7]

Defendant points out, among other factors, that during the reduction-in-force period it had a policy against overtime work except where necessary to permit an employee to finish an assigned task, and that plaintiff had no such task. Defendant argues, justifiably, that it is economically unwise to schedule overtime costs when work is declining at such a rate as to demand plant wide layoffs.

■ The trial court found that plaintiff had failed to make a prima facie case that she had been discriminated against on account of her sex and we find no clear error in such finding. We think it pertinent to add, in this regard, that plaintiff's argument that she had made out a prima facie case would avail her nothing since the error, should such there have been, was harmless. The full merits of plaintiff's proofs and defendant's defense were heard and appraised in reaching the manifest conclusion that plaintiff had not suffered employment discrimination based on her sex[8] with respect to either her layoff, her transfer, or her overtime work.

The class action sought to be asserted was on behalf of three separate classes, namely the female employees and applicants for employment as draftsmen in Department 352 since 1969, the female employees affected by the allegedly discriminatory benefits in defendant's health insurance plan with respect to pregnancy, and the female employees affected by the allegedly discriminatory impact of the "Coordination of Benefits" clause.[9]

■ After a hearing, the District Court refused to certify any of these claims for class action. As to the pregnancy claims it

---

**6.** *Washington v. Davis*, 426 U.S. 229, 253, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (concurring opinion) (quoted in *Meyer v. Missouri State Highway Comm.*, 567 F.2d 804, 808 (8th Cir. 1977)).

**7.** Transcript 42–43.

**8.** *See Peters v. Jefferson Chemical Co.*, 516 F.2d 447 (5th Cir. 1975).

**9.** This provision, located in the "General Information" section of the policy, makes a wife's health insurance secondary to that of her husband if the husband is covered by group insurance issued by his employer and both policies provide coverage for the claim.

was found as a fact that plaintiff, due to her hysterectomy, was incapable of bearing children and, as to Coordination of Benefits with her spouse, that she had no spouse. The named plaintiff was obviously not a proper class representative under Fed.R. Civ.P. 23(a)[10] since she is not a proper member of the class she seeks to represent. As the Supreme Court has held:

> In short, the trial court proceedings made clear that Rodriguez, Perez and Herrera were not members of the class of discriminatees they purported to represent. As this court has repeatedly held, a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members. . . . The District Court found upon abundant evidence that the plaintiffs lacked the qualifications to be hired as line drivers. Thus, they could have suffered no injury as a result of the alleged discriminatory practices and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury.[11]

The draftsmen positions, as the District Court properly found, actually comprised two separate classes, with thirteen applicants for employment in one class and eleven actual employees in the other, involving different allegations of discrimination. Both classes were found to be too small to certify as class actions.[12]

We find that the record as a whole supports the decision of the District Court that this case does not present a valid claim of sex discrimination. There is no clear error in the denial of individual relief nor is there an abuse of discretion in the refusal to certify as a class action. The judgment below is affirmed.

---

**10.** Rule 23(a) provides:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**11.** *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977) (footnote and cita-

tions omitted) (quoted in *Walker v. World Tire Corp.,* 563 F.2d 918, 922 (8th Cir. 1977)); *see also Wright v. Stone Container Corp.,* 524 F.2d 1058 (8th Cir. 1975).

**12.** The Court permitted plaintiff a substantial period of time within which to "contact as many of the persons affected at McDonnell Douglas Corporation as she may desire to determine if they would like to join in this suit as additional individual plaintiffs." (Order of August 26, 1976.) After several extensions of time no additional complainants were produced.