Robert JONES, Sr.,

and

Irving Gaines, Plaintiff-Intervenor,

v.

MacMILLAN BLOEDEL CONTAINERS, INC.

No. LR–75–C–4.

United States District Court,
E. D. Arkansas, W. D.

Nov. 27, 1979.

John W. Walker, Little Rock, Ark., for plaintiff and plaintiff-intervenor.

Gaines N. Houston, Little Rock, Ark., and Thomas H. Barnard, Cleveland, Ohio, for defendant.

### ORDER

EISELE, Chief Judge.

 Pending before the Court is the plaintiff's motion for class certification in this cause of action brought pursuant to 28 U.S.C. § 1343 seeking relief authorized by 42 U.S.C. §§ 1981 and 2000e, *et seq.*[1] A

---

1. The defendant denies that this Court has jurisdiction to consider this cause of action because of the untimely filing by the plaintiff of his charge with the EEOC. That the timely filing is a jurisdictional prerequisite cannot be denied. *See United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Olson v. Rembrandt Printing Co.*, 511 F.2d 1228 (8th Cir. 1975). It is equally well established that if a violation is continuing in nature, the limitation period does not begin to run. *Olson, supra; Equal Employment Opportunity Comm. v. Western Publishing Co.*, 502 F.2d 599 (8th Cir. 1974). When a charging party attacks a current employment policy, it is by nature continuing; a policy charge is always considered timely filed so far as the EEOC is concerned. EEOC Compliance Manual § 208.1. And while

hearing on the motion commenced June 29, 1979, and continued on August 16 and 17. At the conclusion of the hearing the Court asked that the parties submit memoranda and proposed findings of fact and conclusions of law, which they have now filed.

In considering a motion for class certification, the issue is whether, under Rule 23, Gaines, the plaintiff-intervenor, should be permitted to represent a class of alleged discriminatees. The requirements of Rule 23 can be summarized as requiring a showing by the plaintiff that the class is so numerous that joinder is impracticable, that there are common questions of law or fact, that the claims or defenses of the proposed representative are typical of the class, and that the representative parties will adequately represent the interests of the class. An additional requirement pertinent in this case is that the defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate either injunctive or declaratory relief for the class as a whole.

Each of the Rule 23 requirements must be met before a class can be certified. The Supreme Court stated in *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977):

"We are not unaware that suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs. Common questions of law or fact are typically present. *But careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains nonethe-*

*less indispensible.* The mere fact that a complaint alleges racial or ethnic discrimination does not in itself ensure that the party who has brought the lawsuit will be an adequate representative of those who may have been the real victims of that discrimination." 97 S.Ct. at 1898. (Emphasis added.)

Irving Gaines asks to be certified as the representative of a class composed of:

". . . all black employees, applicants for employment of or with defendant company or its predecessor company from 1970 to this date; all blacks who have been denied promotions, terminated, all prospective or future black employees with defendant, and all blacks who have been discriminatorily affected by defendant's policies and practices because of or by reason of their race or color."

Gaines, who is employed by the defendant as a Corrugator Leader and substitute for the foreman in his department, alleges racial discrimination in promotions to higher paid jobs, in that blacks receive no notice of pending supervisory positions and that whites with less seniority are selected over blacks who have more. He also claims that his work load was cut and given to a white employee, and that there is discrimination in job training practices, particularly concerning rates of pay.

It is clear that the class as defined by the plaintiff cannot be certified. Gaines has never had a position in the office nor has he

---

a determination of timeliness by the EEOC is not binding on the Court, it is entitled to great weight. If there has been more than one discriminatory act charged, as here, the statute begins to run anew from the date of the alleged violation. *Molybdenum Corp. of America v. Equal Employment Opportunity Comm.*, 457 F.2d 935 (10th Cir. 1972). And when one of the allegations concerns a continuing violation, the limitations period does not begin to run.

Gaines' charge is dated November 2, 1976. In the space entitled "Date Most Recent or Continuing Discrimination Took Place," he wrote, "11–1–73 1–2–75 and continuing." In his explanation, he complains of "policies of racial discrimination. They do not have blacks in high paying positions. . . . MacMillan Bloedel practice [sic] discrimination against

blacks for whites." Clearly he is alleging a continuing violation. *Cf. Cedeck v. Hamiltonian Federal Savings & Loan Assn.*, 551 F.2d 1136 (8th Cir. 1977). The evidence presented at the hearing substantiated the continuing nature of his claim and the generality of his allegations.

Thus, even though the charges concerning the specific instances on November 1, 1973, and January 2, 1975, would clearly be filed untimely were they standing alone, since they are combined with a continuing charge of discriminatory policies regarding promotion, the charge is sufficient to provide the jurisdictional basis for this Court's consideration. *See generally*, 1 Federal Regulation of Employment Service §§ 3:11, 12, and 13 (1978).

done any clerical work. His experience has been limited to production work in the bargaining unit and, in fact, he has himself disavowed knowledge or intent to represent office employees. Nor do his claims apply to those at the supervisory, salaried level. So the class would properly be limited, in any event, to hourly workers in the bargaining unit.

■ The plaintiff seeks to include all "prospective or future black employees with defendant," but will not be allowed to do so. To the extent that future employees would be affected by discrimination subsequent to this cause of action, injunctive relief, if any is given, will, as a practical matter, adequately protect their interests regardless of whether these presently unascertainable persons are class members. *See Wilson v. Allied Chemicals Co.*, 456 F.Supp. 249, 255 n. 5 (E.D.Va.1978). *Cf. Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D.Ill.1977) (relying on *Mathews v. Diaz*, 426 U.S. 67, 72–73 n. 3, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)).

The questions of law and fact raised by the plaintiff are common to all members of the narrowed putative class, implicating, as they do, issues relating to racial discrimination in various aspects of the employment relationship. at MacMillan Bloedel. Ample evidence suggests that certain allegedly discriminatory practices are widespread. The defendant is thus alleged to have acted in a manner generally applicable to the class, thereby making injunctive and declaratory relief appropriate.

However, the other Rule 23 requirements of numerosity, typicality, and adequacy of representation are not so easily resolved.

In *Doctor v. Seaboard Coast Line Railroad Co.*, 540 F.2d 699, 708 (4th Cir. 1976), the court held that in considering whether an action may be maintained on behalf of a class, a trial court should identify the character (but not the merits) of each named plaintiff's claim and then decide whether there is a class as to which such claim is typical and, if so, whether such class claims are sufficiently numerous to warrant class certification.

Gaines heard from a friend about possible employment with MacMillan Bloedel, applied, and was hired in 1971 as a loader in the Shipping Department, which is a line of progression job according to the defendant.[2] He obviously did not suffer from any adverse discrimination in hiring. Nor was he hired into a dead-end job classification. Thus Mr. Gaines cannot be heard to claim (nor has he in his motion to intervene) that he suffered the same injury as "applicants for employment of or with defendant company or its predecessor company from 1970 to this date." Accordingly, he is not a proper representative for a class of unsuccessful applicants for employment. *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977); *Tuft v. McDonnell Douglas Corp.*, 581 F.2d 1304 (8th Cir. 1978); *Walker v. World Tire Corp.*, 563 F.2d 918, 922 (8th Cir. 1977).

By the same analysis, Gaines is not typical of a class of blacks terminated by the defendant, inasmuch as he is still employed by MacMillan Bloedel. Thus he would not be a proper representative of such a class. Nor should he represent probationary employees who did not become permanent employees.

Thus, the group remaining which Gaines could conceivably represent are black employees of the defendant or its predecessor company from 1970 to the present who have been adversely and discriminatorily affected by the company's pay, promotion, senior-

---

**2.** This is disputed by Gaines, who testified that in 1971 he was hired as a *stacker* (loader in his deposition) in the shipping department, which was not a line of progression job. (The collective bargaining agreement does not refer to *stacker* but to *loader*. Loader is in the line of progression.) He worked there about three weeks, went to be a front line trucker in the joining department for six months, and then went on to be stacker in the joining department for another six months. For the next two and one-half years he was a bundler in joining, for a year a fill-in in the corrugating department, and then he became off-bearer in that department. By his testimony he got into the line of progression when he became a stacker in joining, no more than seven months after he was hired.

ity, work assignment, discipline and job training policies, and its supervisory practices. As the plaintiff has shown that there are other black employees who have similar grievances concerning such policies or practices, he has met the typicality requirement of Rule 23. *Donaldson v. Pillsbury Co.*, 554 F.2d 825 (8th Cir. 1977).

From the evidence adduced before the Court, it would appear that of 158 present hourly employees, 34 are black. Since 1975, 123 people have been hired. (Some of these people are included in the present group of 158.) Fifty-four of those have been black. In 1974 there were 41 black employees; in 1971, 30. While it is not possible to state definitively the number of potential class members, it does not appear to be a very large group. At the conclusion of the class certification hearing, an affidavit signed by 30 people (some of whom, according to the affidavit, were disappointed applicants) was filed in support of certification. That affidavit suggests that joinder by individual intervenors may very well be practical. That conclusion is also buttressed by the fact that in his deposition Mr. Gaines identified by name three other potential class members (in addition to those whose names are on the affidavit). At the hearing, 13 employees with claims against the defendant company testified, as did five former employees and one applicant. Whether there is a sufficient showing of numerosity is thus a very close question. Application of the guidelines suggested by Professor Miller[3] indicates that we are basically in the broad discretionary area as far as numbers are concerned. In such situations, other factors may assist in informing the exercise of such discretion. For instance, here the possible monetary substantiality of the likely claims (denial of promotion being a central issue) and the management prob-lems which would result from certifying a class tend to militate against a finding that the numerosity requirement has been met. Further, it does not appear likely that the number of individual claims that might be filed would be more burdensome, in toto, than the single class action proposed. Still, numerosity is a very close question here.

The concern that the class representative adequately represents the class is predicated upon the due process concept that one's day in court may not be denied him without a fair and adequate substitute both for the litigant himself and his lawyer. The litigant here appears to have a stake in the outcome which is consonant with that of the class[4] and he has exhibited no lack of motivation to proceed against the defendant company. It is true that resources adequate to the trial of class action of the scope suggested have not been clearly shown, but, on balance, the Court concludes this should be no obstacle. Mr. Gaines has retained experienced counsel to represent him and the proposed class. *See generally, Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 563 (2d Cir. 1968), *reversed and remanded on other grounds*, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732.

Finally, the defendant in its post-trial brief disputes Mr. Gaines' adequacy as class representative, stating:

"Given the allegations of Union-related discrimination, Gaines' failure to join the Union in the instant lawsuit strongly militates against any finding that he can fairly and adequately represent the interests of alleged class members. A class representative interested in fully protecting the interest of his class would join all those people who injured the class and seek all of the remedies that would be available."

---

3. A. Miller, An Overview of Federal Class Actions: Past, Present, and Future, 22, 23 (1977).

4. The defendant disputes this conclusion, stating that:

"Gaines' adequacy as a class representative is further undercut by his open antagonism to and conflict with other class members when his personal interest are [sic] at stake.

In his deposition, he openly stated that he should be preferred over any other blacks. After testifying that the company had promoted two blacks to foreman, Gaines stated: *'If they got two blacks, I should have been chose and I feel like that right now.'*"

The Court rejects this view after consideration of the totality of Mr. Gaines' deposition.

The original complaint, readopted later, alleges that the defendant company used a seniority standard for layoffs with the result that "proportionately more blacks will be laid off during an economic recessionary period than whites."

The testimony and depositions offered at the hearing do indicate that a substantial part of the claims of discriminatory treatment were in fact directed at the union, its stewards, and the collective bargaining contract. Yet the union has not been named as a party defendant. While the plaintiff's failure to join the union is not conclusive of his adequacy as a class representative, it does at least suggest that Mr. Gaines might not fairly and adequately protect the interests of the class. *East Texas Motor Freight Systems, Inc. v. Rodriguez, supra*, 431 U.S. at 405, 97 S.Ct. 1891 (by analogy); *Wright v. Stone Container Corp.*, 524 F.2d 1058, 1062 (8th Cir. 1975).

The plaintiff-intervenor himself does not consider the union's role in discrimination at all minor. In his deposition he stated that the union discriminated against him personally in the processing of a grievance and by allowing the company to continue without black supervisors. When asked if there is discrimination by the union against all blacks in the administration of the contract, he stated:

"A Yes.

"Q What way?

"A Because the contract is to benefit the senior employees and the senior employees are the white people. Black people are junior employees in that company.

"Q And you say the union discriminates against blacks because of that?

"A Yes.

"Q By having the seniority clause?

"A Exactly. You can't get—I mean like whatever goes on in that union is for the senior people. The junior people don't have anything in that union really to do or say.
The junior people get by on what is left for them to get.

"Q And in that manner, you claim the union discriminates against blacks?

"A Yes. And that caused the whole entire thing. That covers everything because whatever goes in that plant is for senior people, so it's no way that you can—what else can you do?

"Q Do you claim the union or the union contract discriminates against blacks in any other manner?

"A If it discriminates in that manner, it discriminates in all the other manners. That's total discrimination.

"Q But other than seniority, is there any other way the union or the union contract discriminates?

"A The whole contract is on seniority.

"Q Other than seniority, and I understand what you are saying that the seniority plays a big role, but other than seniority, does the union or the union contract discriminate against blacks in any other way?

"A I would have to go back and read this.

"Q You can't think of any other way right now; is that correct?

"A In their bargaining.

"Q How do they discriminate against blacks in their bargaining?

"A They bargain for the senior people.

"Q Well, other than seniority, and—

"A It all comes back to seniority.

"Q Then that's the problem; is that right?

"A And the bargaining committee and everything, it comes back to seniority. You have no voice at the union hall."

In his EEOC charge he stated that "Mac-Millan Bloedel and the United Paper Workers Union, Local 1422, discriminates against all blacks . . .." In view of Gaines' own statements, it is difficult to understand why the union has not been joined as a party defendant in this case. Decisions concerning appropriate parties-defendant bear greatly upon the determination of the ade-

quacy of a party to represent a class since the rights of the class may be severely prejudiced by any mistake or oversight in the making of such decisions.[5] As stated in *Wright v. Stone Container Corp.*:

"We also doubt that plaintiff was an adequate class representative in the court below. He failed to join the unions as parties defendant despite the existence of agreements between labor and management which regulated seniority and made difficult the transfer from one plant unit to another. Wright sought to represent persons who could have been adversely affected by a change in labor's seniority and transfer rules but openly opposed joining the unions who were partly responsible for such policies. We have heretofore stated that the unions should be joined in such litigation where their policies have contributed to the creation of suspect employment practices. *See Gilmore v. Kansas City Terminal Ry.*, 509 F.2d 48, 52–53 (8th Cir. 1975)."

*Supra* at 1062. The Court also notes with respect to this issue that Mr. Gaines in 1975, when deposed, held a union position, that of steward, and he had been a member of the negotiating committee previously.

■ When the close question of compliance with the requirement of numerosity is added to the questions raised concerning the adequacy of the plaintiff-intervenor as class representative,[6] this Court cannot find that the requirements of Rule 23 have been met so as to allow certification of Irving Gaines as representative of a class claiming racial discrimination in various conditions of employment at MacMillan Bloedel.

5. Indeed, absent the union as a party-defendant the Court may be unable to accord the plaintiff the relief required to make him and the putative class members whole, since the seniority system which he challenges and which is created by the terms of the collective bargaining agreement in effect at MacMillan Bloedel is a creation of the company *and* the union. Since the union would therefore be implicated in any modification of the seniority system, the union is a necessary—perhaps indispensable—party to this action. *See Curtis v. United Transportation Union*, E.D.Ark., No. B–76–C–27 (1979).

It is therefore Ordered that the motion for class certification be, and it is hereby, denied.

It is further Ordered that the individual claims of Irving Gaines be tried beginning at 9:30 a. m. on Monday, April 14, 1980.

6. The alternative of conditioning certification of a class upon the plaintiff's bringing in the union as an additional party-defendant is not acceptable for many reasons not the least of which is that such an approach puts the Court in the position of guiding the litigation and, in effect, making up for the inadequacy of the named plaintiff to properly represent the class on his own initiative—the very premise of the requirement of Rule 23(a)(4).