**Alana K. COOPER, Plaintiff,**

v.

**VIRGINIA BEACH FIRE DEPARTMENT, et al., Defendants.**

**No. CIV.A.2:01CV967.**

United States District Court, E.D. Virginia, Norfolk Division.

April 12, 2002.

---

Harrison Benjamin Wilson, III, Richmond, VA, for Plaintiff.

Leslie Louis Lilley, Mark Douglas Stiles, Office of the City Attorney Virginia Beach, VA, for Defendants.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter is before the Court on Defendant Virginia Beach Fire Department's ("VBFD") motion to dismiss itself as a party in this action and Defendants VBFD's and City of Virginia Beach's motion to dismiss Plaintiff's claim for disparate enforcement of the grooming policy. For the following reasons, the Court **GRANTS** Defendant's motion to dismiss VBFD as a party in this action and **DENIES** Defendants' motion to dismiss Plaintiff's claim for disparate enforcement of the grooming policy.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Alana K. Cooper ("Plaintiff") is an inspector with the Virginia Beach Fire Marshal's Office. On August 3, 2001, Plaintiff filed a complaint with the EEOC and Virginia Council on Human Rights, alleging claims for disparate treatment and hostile work environment under Title VII of the Civil Rights Act of 1964 as amended and the Virginia Human Rights Act, Va.Code Ann. § 2.1–714. Specifically, Plaintiff alleged that she was denied the opportunity to realign her hours of work and denied equal use of her assigned city vehicle, when compared to her male counterparts. On September 24, 2001, the Area Director of the EEOC issued a right to sue letter to Plaintiff.

On December 21, 2001, Plaintiff filed the instant action in the United States District Court for the Eastern District of Virginia against the VBFD and the City of Virginia Beach (collectively, "Defendants"). Plaintiff alleges claims for disparate treatment, i.e., denial of opportunity to realign her hours, denial of equal use of her city vehicle, and disparate enforcement of the grooming policy. Plaintiff demands a declaratory judgment finding that the Defendants' actions violate Title VII of the Civil Rights Act, compensatory damages for economic distress in the amount of $300,000, and reasonable attorney's fees and costs.

On February 4, 2002, Defendants contemporaneously filed their answer and motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). On February 22, 2002, after receiving an enlargement of time, Plaintiff filed her Response to Defendants' Motion to Dismiss. The Court scheduled a hearing on Defendant's motion for April 9, 2002. Counsel for Plaintiff and Plaintiff, absent explanation, did not appear at the hearing. Although no argument was heard at the scheduled hearing, the Court finds that argument would not aid the decisional process of the Court. Accordingly, this matter is now ripe for determination before the Court.

## II. ANALYSIS

### A. Defendants' Motion to Dismiss Plaintiff's claims against VBFD

■ Defendants filed their motion to dismiss the claims against VBFD as a party to the action because it did not come within the definition of "employer" or "per-

son" as defined in 42 U.S.C. § 2000e(a) and (b). VBFD has no employees and all persons assigned to the VBFD are in fact employees of the City of Virginia Beach. Plaintiff, in her Response to Defendants' Motion to Dismiss, concedes the dismissal of VBFD if the fire department employees are employees of the City of Virginia Beach. The Court finds that the City of Virginia Beach is the Plaintiff's employer for purposes of Title VII. Accordingly, the Court **GRANTS** Defendants' motion to dismiss VBFD as a party to the action because it is not the "employer" within the meaning of the statute. The City of Virginia Beach remains the sole defendant in this action in its capacity as employer of the fire department employees.[1]

## B. Defendants' Motion to Dismiss Plaintiff's Grooming Policy Claims

Defendants argue that Plaintiff's claims regarding the disparate application of the grooming policy should be dismissed because Plaintiff failed to exhaust her administrative remedies regarding these claims. To exhaust her administrative remedies on these claims, Plaintiff was required to submit them for the EEOC's investigation. Defendants attach Plaintiff's submission to the EEOC, which does not mention any allegations about the grooming policy in her complaint. Accordingly, Defendants argue that the Court does not have jurisdiction over these claims. Plaintiff responds that she alleged a general claim for disparate treatment and the claim for inconsistent enforcement of the grooming policy is proof of this general claim. Further, Plaintiff alleges that the grooming policy claim is one which would have emerged during the course of the investigation of her claims of disparate treatment. The EEOC issued a right to sue

letter with the determination that: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge." Compl. Attachment A.

Title 42, United States Code section 2000e-5(b) requires that a plaintiff exhaust her administrative remedies before commencing an action against an employer under Title VII of the Civil Rights Act. *Stebbins v. Nationwide Mut. Ins. Co.*, 382 F.2d 267 (4th Cir.1967), *cert. denied*, 390 U.S. 910, 88 S.Ct. 836, 19 L.Ed.2d 880 (1968). Otherwise, the district court does not have subject matter jurisdiction to adjudicate the claim. *Id.* This jurisdictional prerequisite is fulfilled when a complainant first files a charge with the EEOC, the EEOC then investigates the charges and issues a right to sue letter based upon the findings of its investigation. What is alleged in the original charge prescribes the scope of the potential civil suit that might later be brought by the complainant. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has refused to limit the scope of the ultimate litigation, brought either by the EEOC or the plaintiff, exclusively to the charges in the original complaint in certain circumstances.

In *EEOC v. General Electric Company*, 532 F.2d 359 (4th Cir.1976), the Fourth Circuit held that "the original charge is sufficient to support action by the EEOC as well as a civil suit under the Act for any discrimination stated in the charge itself or developed in the course of a reasonable investigation of that charge, provided such

---

**1.** Plaintiff reserved the right to add additional proper party defendants identified through the course of discovery. This is a matter

properly addressed in a motion to amend the Complaint and will not be addressed prior to a motion by Plaintiff.

discrimination was included in the reasonable cause determination of the EEOC and was followed by compliance with the conciliation procedures fixed in the Act." *Id.* at 366; *see also EEOC v. Am. Nat'l Bank,* 652 F.2d 1176, 1185–86 (4th Cir.1981) (holding that the expansion of the complaint against an employer to encompass its practices at its multiple locations was proper because the employer was given adequate notice of the practices under investigation and ample opportunity for conciliation). The Fourth Circuit employs this doctrine to avoid technical adherence to the constraints of the EEOC complaint and permits the scope of an action brought as a result of the EEOC complaint to be broadened within reasonable bounds. Thus, the complainants are not restricted by the terms of their own inexperienced draftmanship. If the ultimate claims against the defendant are reached after the EEOC investigation and attempts at conciliation, regardless of the original complaint's terms, then the court will consider all such claims.

The issue before the Court, however, falls slightly beyond the circumstances conceived by *EEOC v. General Electric Company.* In the instant case, the additional allegation of disparate application of the grooming policy was not found in either the original EEOC complaint or as the result of any investigation by the EEOC. Defendants seek to dismiss this claim because it has not yet navigated the administrative process and investigation requisites. The Court's inquiry is informed by *Nicol v. Imagematrix,* 767 F.Supp. 744 (E.D.Va.1991). In *Nicol,* the court discussed whether the civil claims of hostile work environment and sexual harassment were within the scope of the EEOC complaint which originally alleged solely pregnancy discrimination. Dismissing the sexual harassment and hostile work environment claims, the district court noted that the EEOC complaint filed by

plaintiffs did not contain any indication of the additional claims and rejected the argument by plaintiffs that the additional claims were related because they "stem[med] from the same 'root source,' namely defendants' animus towards women." *Id.* at 754. The court acknowledged that such an interpretation of the scope would "effectively nullify the requirement that the claims asserted in court be essentially those presented to the administrative body." *Id.*

Confronting similar facts to the instant case, in *Stehle v. Gen. Mills Restaurant, Inc.,* 875 F.Supp. 320 (D.S.C.1994), the district court remarked on the "fundamental" difference between the law under *EEOC v. Gen. Elec. Co.,* where the EEOC performed an investigation and found sufficient facts to bring additional allegations of a different type of discrimination, and the facts of *Stehle,* which involved additional allegations of sexual harassment brought by the plaintiff that were not mentioned in either the EEOC charge of racial discrimination or unearthed by the EEOC investigation. *Id.* at 322–23 ("There is, of course, a fundamental difference between what the EEOC found and what the EEOC could have found, as determined by a court. One is a procedural fact and one is speculation."). The court held that a "civil suit under Title VII is limited to discrimination charged in the report to the EEOC or to discrimination actually found by the EEOC upon investigation of the original charge." *Id.* at 323. The court dismissed the plaintiff's additional allegations of sexual discrimination because they were beyond the scope of the original EEOC complaint for racial discrimination.

Thus, the law in the Fourth Circuit is clear. The scope of claims appropriate for adjudication arising from a complaint filed with the EEOC are encompassed by either the complainant's

charge itself or the EEOC's investigatory findings. In the instant case, there is no indication from the EEOC-issued right to sue letter that there were specific findings of disparate treatment of Plaintiff with respect to the grooming policy as a result of its investigation. The Court must now determine whether Plaintiff's claim for disparate application of the grooming policy was encompassed by her original charge. In her original EEOC charge, Plaintiff claimed that she was subject to general disparate treatment in the terms and conditions of her employment. Specifically, Plaintiff cited two instances of this discrimination: her inability to realign her hours of work and unequal use of her assigned city vehicle.

Plaintiff's civil Complaint names these two instances of disparate treatment and one additional circumstance: that the grooming policy was not enforced against the men of the VBFD in the same way it was enforced against her. Defendants base their motion to dismiss this claim on the premise that it was not raised in Plaintiff's original charge with the EEOC. Defendants' interpretation of the application of *EEOC v. General Electric Company* to the scope of the instant charge is overly broad. In *Wilson v. Allied Chem. Corp.*, 456 F.Supp. 249 (E.D.Va.1978), the court recognized that EEOC complaints are generally filed by lay persons with limited understanding of the scope of their legal claims. *Id.* at 253–54 ("As such, [the claims] are often 'limited in scope, contemplating only particularized allegations which do not go to underlying discriminatory causes or policies.'"). Accordingly, the court held, citing *EEOC v. General Electric Company* as authority, that "a plaintiff may seek redress through the Court of any claims which are 'like' or 'related' to those raised in the EEOC charge." *Id.* at 254. Thus, the Court must liberally construe the scope of the EEOC charge. *See id.* ("[A] Title VII complaint cannot be based upon new allegations wholly unlike those presented to or considered by the EEOC.").

The Court finds that the scope of Plaintiff's EEOC charge for disparate treatment necessarily includes her claim for disparate application of the grooming policy. Plaintiff's EEOC charge contains a general claim for disparate treatment, citing two specific examples of such conduct. Plaintiff's additional allegation contained in her complaint merely sets forth another example of similar conduct she originally claimed was discriminatory. Plaintiff does not raise another type or source of discrimination; instead, she alleges the same kind of disparate treatment that is without question "like" and "related" to the kind of disparate treatment contained in her EEOC charge. *Cf. Greene v. Brown*, 451 F.Supp. 1266 (E.D.Va.1978) (finding that the scope of a charge for disparate treatment by plaintiff's supervisor did not include a charge for disparate impact of personnel regulations).

█ The Court's findings directly reflect the interests served by a liberal yet contained construction of a plaintiff's EEOC charge. First, because persons originally filing a claim for employment discrimination are often uninformed of their specific legal rights and the requisites for their legal claims, it would be against the interests of justice to deny them these rights because of technical adherence to the letter of their undeveloped claim. Second, the purpose of an initial EEOC filing and the administrative investigation process is to screen plaintiffs' claims, put defendants on notice of those claims, and attempt a conciliation of those claims. If Defendants are on notice of the type of discrimination charges with which they are faced, even if every specific instance is not denoted in the claim, and given a chance to resolve the claims, the initial charge meets the purpose for which

the system is in place. *See Hubbard v. Rubbermaid, Inc.*, 436 F.Supp. 1184, 1188–89 (D.Md.1977) ("When faced with the question of the proper scope of a Title VII complaint, a court must balance two competing statutory policies. The first is that Title VII is a broad remedial statute designed to protect those who are the least able to protect themselves.... The second policy is that Title VII plaintiffs should not have an unrestrained ability to litigate allegations of discrimination which are neither contained in the EEOC charge nor investigated by the EEOC, thereby frustrating the statutory scheme of informal persuasion and voluntary compliance."). The Court finds that Defendants were adequately informed in both general and specific terms that Plaintiff alleged claims of disparate treatment in the form of unequal application of personnel policies. To find otherwise would frustrate the balance between the two competing policies of Title VII.

Accordingly, the Court interprets the scope of Plaintiff's EEOC charge to include the claim for the disparate application of the grooming policy and, therefore, **DENIES** Defendants' motion to dismiss this claim for lack of subject matter jurisdiction.

### III. CONCLUSION

For the foregoing reasons, VBFD's motion to dismiss VBFD as a party to the instant suit is **GRANTED** and Defendants' motion to dismiss Plaintiff's claim for disparate application of the grooming policy is **DENIED**.

The Clerk is **DIRECTED** to send a copy of the Memorandum Opinion and Order to the parties.

IT IS SO **ORDERED**.