**Robert L. SULLIVAN, Jr., Plaintiff,**

v.

**SNAP–ON TOOLS CORPORATION, Defendant.**

**Civ. A. No. 88–0443–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

March 8, 1989.

Jay J. Levit, Levit & Mann, Richmond, Va., for plaintiff.

Carol L. Wingo, Michael S. Wilson, E. Milton Farley, III, Robert J. Stoney, Harry M. Johnson, III, Hunton & Williams, Joseph D. McCluskey, Richmond, Va., for defendant.

## MEMORANDUM OPINION

SPENCER, District Judge.

This matter is before the Court on Snap-on Tools Corporation's ("Snap-on") motion for summary judgment. In his amended complaint, Robert L. Sullivan ("Sullivan") seeks damages for the alleged breach of his employment contract. The dispositive issue presented is whether Sullivan's employment contract with Snap-on contained a just cause provision which removed him from an employment at will status. For the reasons stated below, the Court concludes that Sullivan was merely an at will employee. Snap-on's motion for summary judgment will therefore be granted.

Sullivan first became associated with Snap-on in 1976 as an independent dealer. In 1979, Sullivan relinquished his dealership and accepted a position with Snap-on as a field manager. In October, 1983, Snap-on promoted Sullivan to the position of sales manager and transferred him to the Richmond, Virginia branch office. Snap-on relieved Sullivan of his duties on May 15, 1987. Snap-on subsequently offered Sullivan a field manager position at another branch but he rejected the offer because he considered it a demotion.

Sullivan claims that Snap-on breached his employment contract by discharging him without just cause on May 15, 1987. He contends that Snap-on's employment policies, which were offered by Snap-on's management personnel and through an employee handbook, required that Snap-on have just cause to discharge him. Even if there was no written just cause agreement, Sullivan asserts that the parties had an oral just cause employment contract.

Snap-on argues that Sullivan was an at will employee, and that the employee handbook contained express at will language. Snap-on contends that the handbook's disciplinary policy did not alter Sullivan's at will status because the handbook contained neither a just cause provision nor an exclusive list of infractions which subject an employee to discipline. Snap-on maintains that the handbook merely established guidelines rather than mandatory disciplinary procedures which did not alter Sullivan's at will status.

"In Virginia, where no specific time is fixed for the duration of the employment, there is a rebuttable presumption that the hiring is terminable at will." *Miller v. SEVAMP, Inc.,* 234 Va. 462, 465, 362 S.E. 2d 915, 917 (1987) (citations omitted). However, the employment at will doctrine is not absolute. If an employer promises that an employee will not be dismissed without cause, thus giving rise to a fixed, intended duration of employment, or where an employment contract is supported by additional consideration, the contract is taken out of the at will category. *Id.* at 466, 362 S.E.2d at 917.

■ Sullivan testified during a deposition that his superiors promised that as long as he performed his duties to Snap-on's satisfaction, he would be afforded job security. These oral assurances may have expressed Sullivan's and Snap-on's " 'optimistic hope' ... that their future association [would] be profitable and long-standing." *Pratt v. Brown Machine Co.,* 855 F.2d 1225, 1234 (6th Cir.1988) (citation omitted). However, these purported statements fail to support Sullivan's contention that an oral just cause representation is enforceable. The statute of frauds, Va. Code Ann. § 11–2(7) (Repl.Vol.1985), bars proof of an oral employment contract not performable within a year and such an agreement is therefore unenforceable. *Haigh v. Matsushita Electric Corp.,* 676 F.Supp. 1332, 1347–48 (E.D.Va.1987) (oral contract of indefinite duration is within the statute of frauds and a breach does not constitute performance but instead excuses the non-breaching party from further performance). *See also Windsor v. Aegis Services, Ltd.,* 691 F.Supp. 956, 960 (E.D.Va. 1988) (oral just cause employment contract is capable of being breached, but not performed, within one year). Moreover, mere oral promises or assurances of job security are insufficient to rebut an at will presumption. *Addison v. Amalgamated Clothing and Textile Workers,* 236 Va. 233, 235–36, 372 S.E.2d 403, 405 (1988).

Sullivan and Snap-on did not enter into an express, written contract of employment for a definite duration. Sullivan alleges that the "Field Employee Handbook" issued by Snap-on, which contains Snap-on's employment practices and procedures, established the terms of the employment contract. *See Thompson v. Kings Entertainment Co.*, 653 F.Supp. 871, 874 (E.D. Va.1987) ("Federal courts [in Virginia] have held that terms and policies contained in an employee handbook can become part of a binding contract."). Sullivan argues that the procedures established in the manual, specifically the standards of conduct and the progressive discipline guidelines, obligate Snap-on to show just cause to fire Sullivan. The Court will assume, for the purposes of this motion, that the Snap-on handbook constituted a part of Sullivan's employment contract and that the requisite contract formation elements are met.

Snap-on's employee handbook does not contain an express just cause provision. Thus, a just cause provision must be implied from its terms and the procedures established therein for Sullivan to rebut his at will status. The Virginia Supreme Court has held that a *written* just cause provision contained in a collective bargaining agreement removed an employee's contract from the at will category. The court concluded that the employer's promise was additional consideration for the employee's services and the agreement was thus treated as one for a fixed duration. *Norfolk Southern Ry. Co. v. Harris*, 190 Va. 966, 976, 59 S.E.2d 110, 114 (1950). The court has declined, however, to imply a just cause provision where one is not explicitly provided. *Addison*, 236 Va. at 236, 372 S.E.2d at 405.

In *Bradley v. Colonial Mental Health & Retardation Services Board*, 856 F.2d 703 (4th Cir.1988), the Fourth Circuit found that a personnel manual which intricately detailed "the offenses that may subject an employee to discipline" and described with particularity "the discipline that may be administered for the enumerated offenses," formed a contract which placed limits on the employer's discretion to discharge an employee without cause. *Id.* at 708. The court reasoned that the right to be disciplined according to the terms of the manual conferred valuable benefits which placed substantive limits on the employer's right to discipline an employee and obligated an employer to discharge an employee only for cause. *Id.*

A threshold issue is which personnel manual governs. Snap-on relies upon the 1985 handbook. Sullivan acknowledges that he also received and relied upon this handbook. However, Sullivan has submitted the 1978 and 1980 manuals, for the ostensible purpose of injecting an issue of fact. These manuals contain essentially the same disciplinary procedure provisions as the 1985 handbook, but do not contain the terminable at will language of the 1985 manual.

In *Thompson v. Kings Entertainment*, Judge Williams addressed the issue whether the issuance of a later handbook superseded or amended inconsistent terms of a prior handbook. The court stated that the issuance of a new handbook does not automatically amend the prior handbook. The new handbook should instead be treated as an offer of employment which an employee may accept or reject. For the new handbook to have force, the elements of contract modification are necessary, and the employee must have "assented to and received consideration in exchange for the change in status." *Thompson*, 653 F.Supp. at 875.

Sullivan apparently concedes that the 1985 field employee handbook applies. He acknowledged receipt of and reliance upon it, and he therefore consented to its terms. Sullivan did not rely upon the earlier manuals, nor was he aware of their existence until this litigation was commenced. Moreover, his promotion in 1983 to the position of sales manager in the Richmond branch provided additional consideration for any modification in the terms of the employee manuals for years 1978 and 1980. Because the 1985 handbook was the only writing Sullivan received, relied upon, and signed for, its provisions govern the employment relation.

"[T]he interpretation of employment contracts, employee handbooks and the like must take place on an *ad hoc* basis." *Bradley*, 856 F.2d at 708 n. 11. The relevant section of the 1985 handbook provides that "[Snap-on] adhere[s] to a philosophy of progressive discipline whenever possible. It consists of four steps: 1) verbal counseling or written warning; 2) written warning; 3) final written warning subject to dismissal; and 4) dismissal." The handbook lists eighteen infractions which "will result in discipline ranging from verbal counseling up to and including immediate dismissal." The actions listed are "not all-inclusive, but are representative of unacceptable conduct for Snap-on Employees." At the conclusion of this list, the manual unequivocally sets forth: "It is the policy of the Company that all jobs remain terminable at the will of the Company."

The mere availability of suggested disciplinary procedures, when no limit is placed on an employer's discretion in their application, does not imply that an employer may discharge an employee only for just cause. *See Bradley*, 856 F.2d at 708 n. 11. Here, the handbook lists infractions which may subject an employee to discipline, but the list is not all inclusive. There is no description of the discipline that may be administered for a specific enumerated offense. Glaringly absent is any enumeration of the grounds for dismissal with cause and there is no mention of termination with cause. Furthermore, these provisions place no substantive limits on Snap-on's discretion. The handbook specifically provides only that the steps will be followed "whenever possible." In short, these provisions lack the specificity and "intricateness" of those contained in the manual referred to in *Bradley*. *Cf. Radwan v. Beecham Laboratories*, 850 F.2d 147, 151 (3d Cir.1988).

The strongest indicator of the nature of the employment relation is found in the express at will language contained in Snap-on's 1985 handbook. Where an employee manual provides that an employee may be dismissed at the discretion of the employer, "[a] clearer expression of intent to create at-will employment can hardly be imagined". *SEVAMP*, 234 Va. at 467, 362 S.E.

2d at 918. Significantly, the personnel manual in *SEVAMP* provided that those guilty of serious breaches of disciplinary infractions would be dismissed. It went on to list the infractions which may be considered examples of justifiable reasons for removal. The court concluded that the contract contained no provisions from which a fixed period of intended duration can fairly be inferred. *Id.*

Although an employer may have an obligation to protect employees from discharge without just cause "when such provisions appear unambiguously in an employee manual and are accepted and relied upon" by an employee, *Bradley*, 856 F.2d at 707, where the "contract contains no provision relating to [an employee's] satisfactory performance, [the court] cannot rewrite it to supply that deficiency." *Addison*, 236 Va. at 236, 372 S.E.2d at 405.

The intended duration of Sullivan's employment with Snap-on cannot fairly be inferred from the terms of the employee handbook and the Court would be rewriting that contract if it were to imply a just cause provision where none exists. An employer's promise to discharge an employee only for just cause should be explicit and unambiguous, and such an intent should be clearly expressed. Snap-on has not undertaken an objective obligation to discharge Sullivan only for just cause by virtue of establishing these progressive disciplinary procedures and policies in its handbook. The unequivocal language of the employee handbook contradicts any suggestion that Snap-on may discharge its employees only for cause; the terms of the 1985 handbook instead express Snap-on's clear intent that employees are terminable at will.

The Court holds that Sullivan was, as a matter of law, an at will employee and Snap-on was free to terminate his employment without just cause. Because there is no genuine issue of material fact and the plaintiff's proof fails completely as to an essential element of his claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986),

the Court grants Snap-on's motion for summary judgment.

An appropriate order shall issue.