J. Scott NICOL and Jody
Nicol, Plaintiffs,

v.

IMAGEMATRIX, INC., Imagematrix
West, Inc., Randall T. Welsh, Scott G.
Adams, Michael Eggleston, Ronald
Hobbs, Defendants.

Civ. A. No. 91–0396–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 3, 1991.

Robert M. Adler, M. Joseph Sterner, Kevin M. Gross, Theresa W. Hajost, Drinker Biddle & Reath, Washington, D.C., for plaintiffs.

James H. Falk, Sr., James H. Falk, Jr., Scott A. Mills, McGovern, Noel & Falk, Washington, D.C., for defendants.

## MEMORANDUM OPINION

ELLIS, District Judge.

### Background

This is a case of the proverbial tail wagging the dog, or more particularly, of the pendent claims tail wagging the federal claim dog. This situation is, at the least, undesirable, for the limited jurisdiction of the federal courts should not be squandered. Nor should federal courts, beguiled

by claims of litigating economy, intrude unnecessarily into the realm of state law adjudication. The appropriate remedy here, invited by settled precedent, is to lop off the state claims tail, leave these claims to their fate in the state courts, and proceed expeditiously to dispose of the federal claim.

Less metaphorically, this is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, with numerous pendent state claims. The Title VII claim set forth in count one of the First Amended Complaint is against Imagematrix and the individual defendants based on allegations of sex discrimination (pregnancy), sexual harassment, and creation of a sexually hostile work environment. Counts two through eight allege state causes of action. Specifically, count two alleges wrongful discharge against Imagematrix and the individual defendants; count three alleges intentional infliction of emotional distress against Imagematrix and the individual defendants; count four alleges breach of contract against Imagematrix and the individual defendants; count five alleges breach of contract against Imagematrix West; count six alleges intentional interference with economic opportunity against Imagematrix and Eggleston; count seven alleges negligent retention against Imagematrix, Hobbs, Adams, and Welsh; and count eight alleges fraud against Imagematrix, Eggleston, Hobbs, and Welsh.

The pertinent factual picture is easily sketched. Plaintiffs, husband and wife, relocated to the Washington, D.C. area from New York City in 1988 after the wife, Jody Nicol, entered into an employment agreement with defendant Imagematrix, a business graphics firm in Falls Church, Virginia. Imagematrix subsequently employed the husband, Scott Nicol, as well. Both Nicols became vice presidents. Defendant Eggleston was President and CEO of the

company, and the other individual defendants served as directors. Defendant Imagematrix West, formerly Gestalt Productions, was a separate graphics business purchased by Imagematrix in March 1989.

The complaint paints a picture of plaintiffs as effective high-level employees. It depicts Eggleston as a womanizer who repeatedly harassed female employees in various ways and particularly disdained pregnant women. The remaining individual defendants allegedly either acquiesced in or contributed to the harassment.

The complaint further reflects that Jody Nicol informed Eggleston of her pregnancy on October 2, 1989. Imagematrix discharged both plaintiffs on November 15, 1989. On March 5, 1990, plaintiffs filed charges with the Equal Employment Opportunity Commission (EEOC). Jody Nicol alleged that she was terminated because she had become pregnant, and Scott Nicol alleged that he was terminated because of his wife's pregnancy. The charges were referred to the Fairfax County Human Rights Commission ("FCHRC") for investigation.[1] Before this investigation was completed, plaintiffs requested and received "right to sue" letters from the EEOC and brought this action.

The matter is now before the Court on (i) defendants' Motion to Dismiss counts two through eight of the First Amended Complaint under Rules 12(b)(1) and 12(b)(6), Fed.R.Civ.P., (ii) defendants' Motion for Summary Judgment, and (iii) defendants' Motion for Sanctions under Rule 11, Fed.R. Civ.P.[2] For the reasons stated below, the Court concludes that defendants' Motion to Dismiss must be granted. The Court also concludes that defendants' Motion for Summary Judgment must be granted with respect to count four and granted in part and denied in part with respect to count one. Defendants' Motion for Sanctions must also be denied.

---

1. Because the FCHRC is a certified § 706 agency, see 29 C.F.R. § 1601.80 (1990), Title VII requires the EEOC to defer initial investigation of discrimination claims to the FCHRC. *See* 42 U.S.C. § 2000e–5(c); 29 C.F.R. § 1601.13.

2. Suggested, but not pressed in defendants' memoranda is the argument that on the facts presented Scott Nicol is not a proper Title VII plaintiff. Accordingly, this issue is not addressed here.

## Analysis

### I. Motion to Dismiss

#### A. Pendent Jurisdiction Standard

Pendent jurisdiction analysis under *United Mineworkers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) consists of a two-part determination. "First, the Court must determine whether it has jurisdiction, i.e., the power, to hear the claim; second, the Court must determine whether in its discretion it should hear pendent State claims which it in law has the power to hear." *Mason v. Richmond Motor Co., Inc.*, 625 F.Supp. 883, 885 (E.D.Va.1986), *aff'd*, 825 F.2d 407 (4th Cir. 1987) (table affirmance); *see also* 3A Moore's Federal Practice ¶ 18.07[1.–3] (1985). The first inquiry as to power itself consists of two elements: (i) there must be a substantial federal claim, and (ii) the state and federal claims must derive from "a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138.

■ In sum, then, pendent jurisdiction analysis is a three-step process:

(1) First, the existence of a substantial federal claim must be confirmed.

(2) Next, if a federal claim exists, the relationship between the federal and state claims must be examined to ascertain whether they arise from a common nucleus of operative fact. If the state and federal claims do not share a common nucleus of fact, then the state claims are not properly pendent and must be dismissed without prejudice. But if they do share a common nucleus of fact, then the state claims are properly pendent to the federal claim and *may* be adjudicated in federal court.

(3) The third and final step of the analysis involves determining whether the district court should exercise its discretion to hear and resolve the state claims or dismiss them without prejudice, leaving plaintiff the option to pursue these claims in state court.

In the case at bar, defendants concede the existence of a federal claim. Thus, the dispute here focuses first on whether certain claims are properly pendent and second on whether the Court should exercise its discretion to hear or dismiss those claims that are properly pendent.

#### B. No Jurisdiction Over Counts Four, Five, and Eight

■ Defendants argue persuasively that there is no jurisdiction to hear the state claims in counts five, eight, and portions of count four[3] as they are not properly pendent; these claims and the Title VII claim do not share a common nucleus of operative facts. Count five alleges breach of contract against Imagematrix West for failure to pay Jody Nicol one percent of its gross monthly sales. Self-evidently, this cause of action is wholly unrelated to the allegations of sexual harassment, sexually hostile work environment, and sex discrimination that form the basis of the Title VII claim. Indeed, plaintiffs' memorandum in opposition to the motion to dismiss does not even list Imagematrix West as a defendant in count one. Count five is completely unrelated to Jody Nicol's discharge; the sole common fact between this claim and count one is the fact of Jody Nicol's employment by Imagematrix. Count eight is similarly unrelated to the Title VII claim. It alleges that defendants Eggleston, Welsh, and Hobbs made knowingly false representations to plaintiffs that they would receive a percentage of equity in Imagematrix as part of their compensation. Facts that might support this allegation are totally unrelated to any facts relating to

---

**3.** As pled in the First Amended Complaint, count four contains three distinct claims: (i) that plaintiffs' discharge constituted a violation of their employment contracts by virtue of language in the Imagematrix employee handbook; (ii) that defendants breached plaintiffs' employment contracts by failing to convey equity in Imagematrix; and (iii) that defendants breached Jody Nicol's employment contract by failing to pay her for accrued vacation leave.

sexual harassment, sex discrimination, or a sexually hostile work environment. Moreover, while the focus of the Title VII claim is plaintiffs' treatment and discharge, the focus of count eight, as pled, is the conduct that allegedly induced plaintiffs to accept Imagematrix's offer of employment. These claims share no common nucleus of facts. The same conclusion also applies to that portion of count four that alleges (i) breach of plaintiffs' employment contracts for defendants' failure to convey equity in Imagematrix, and (ii) defendants' failure to pay Jody Nicol her accrued vacation pay. These allegations share no facts with the Title VII claim, other than the mere fact of plaintiffs' employment.

Most federal courts require only a "loose factual connection between the claims" to satisfy the requirement that the claims arise from a common nucleus of operative fact. *See* 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3567.1, at 117 (1984). Counts four, five, and eight fail even this minimal standard. These counts are "totally different from the federal claim." *Frye v. Pioneer Logging Machinery, Inc.*, 555 F.Supp. 730, 732 (D.S.C.1983); *see also* Federal Practice & Procedure § 3567.1, at 118–20 ("If, however, the ... claims are found to be totally independent, there is no power to hear the claim that has no jurisdictional basis on its own."). These state claims and the Title VII claim are "separately maintainable and determinable without any reference to the facts alleged ... with regard to the other count." *Hales v. Winn–Dixie Stores, Inc.*, 500 F.2d 836, 848 (4th Cir.1974); *cf. Benton v. Kroger Co.*, 635 F.Supp. 56, 59 (S.D.Tex. 1986) (plaintiff's state claim that she was fired in retaliation for claiming workers' compensation for a back injury was not pendent to her federal claim that she was fired because of sex discrimination where alleged incidents of sexual harassment were separate from circumstances surrounding back injury); *Sanders v. Duke University*, 538 F.Supp. 1143, 1148 (M.D.N. C.1982) (suggesting that state and federal claims do not stem from a "common nucleus of operative facts" where plaintiff claimed violation of federal age discrimination statute and breach of contract, but did not allege that his employment contract was breached because of his age). Accordingly, the Court concludes that it lacks jurisdiction over count five, count eight, and the enumerated portions of count four.

## C. Discretionary Dismissal of Remaining Counts

In contrast to the counts described above, plaintiffs' remaining state law claims are properly pendent; they bear a reasonable factual connection to the Title VII claim. But given the considerations bearing on the discretionary component of pendent jurisdiction analysis, the Court concludes that counts two,[4]

---

**4.** Although the merits of count two are not reached here, there is reason to doubt that this count would survive scrutiny on the merits. Count two alleges wrongful discharge in violation of the public policy of Virginia, as embodied in (i) Title VII, (ii) the Virginia Human Rights Act, Va.Code § 2.1–714 *et seq.*, and (iii) the Fairfax County Human Rights Ordinance. Yet it is doubtful that this count fits within the public policy exception to Virginia's at-will rule. Where no specific time is fixed for the duration of employment, Virginia law presumes that the employment relationship is at-will. *See Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 917 (Va.1987). This is plainly the case here: the complaint contains no allegation of a fixed time period, and the employee handbook provided to each plaintiff expressly stated that the relationship between employees and Imagematrix was at-will. Accordingly, absent the application of a statutory exception to the at-will doctrine, under Virginia law plaintiffs could be discharged for any reason, or indeed for no reason, unless the discharge violated Virginia public policy. *See White v. Federal Express Corp.*, 729 F.Supp. 1536, 1549–50 (E.D.Va.1990). Nor does it appear that plaintiffs can point to any such Virginia policy. In *White*, this Court squarely held that an employee cannot avoid the at-will doctrine by claiming that Title VII embodies Virginia's policy and that his discharge violated Title VII. Because neither the Virginia General Assembly nor Supreme Court of Virginia have recognized such a policy exception, courts should not assume the authority to "move the

three,[5] six, seven, and the remaining portions of count four[6] must be dismissed without prejudice, to be pursued, if at all, in state court. The Court would reach the same conclusion for the same reasons with respect to counts four, five, and eight, even assuming they were pendent.

In *Gibbs* the Supreme Court announced flatly that "pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *See* 383 U.S. at 726, 86 S.Ct. at 1139. The Supreme Court further explained that in deciding whether to exercise jurisdiction over state law claims, the district court should, *inter alia*, consider whether the state issues substantially predominate in terms of proof, scope, or remedy, and whether they are closely tied to questions of federal policy. *See id.* at 726–27, 86 S.Ct. at 1139; *see also Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988) ("[The *Gibbs*] factors usually will favor a decision to relinquish jurisdiction when 'state issues substantially predominate, whether in terms of proof, of the scope of

issues raised, or of the comprehensiveness of the remedy sought."). In the instant case, plaintiffs' seven state law claims would overwhelm the Title VII claim and threaten serious jury confusion because of the "divergent legal theories of relief." *Gibbs*, 383 U.S. at 727, 86 S.Ct. at 1139. The state claims "would be pendent to this Title VII litigation much as a dog is pendent to its tail." *Bouchet v. National Urban League, Inc.*, 730 F.2d 799, 805–06 (D.C.Cir.1984) (Scalia, J.);[7] *see also Frye*, 555 F.Supp. at 735 (claims for tortious interference with contract and intentional infliction of emotional distress would predominate over Title VII claim in terms of proof, scope of issues, and remedies and were so dissimilar factually and legally that "there would be a substantial likelihood of jury confusion were the state and federal claims tried together"); *Kennedy v. Mountain States Tel. & Tel. Co.*, 449 F.Supp. 1008, 1011 (D.Colo.1978) (notwithstanding fact that federal age discrimination claim and state claims for breach of contract and tortious infliction of emotional

---

law along some purportedly wise or socially desirable path." *Id.* at 1550 (quoting *Gravins v. International Playtex, Inc.*, 586 F.Supp. 251, 252 (E.D.Va.1984)). The same reasoning applies to the Fairfax County Human Rights Ordinance. Moreover, it is doubtful that a local ordinance can be said to reflect state-wide public policy. Finally, plaintiffs' reliance on the Virginia Human Rights Act as a basis for the public policy exception is misplaced. The Act states that

> Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions. Nor shall the policies or provisions of this Chapter be construed to allow tort actions to be instituted instead of or in addition to the current statutory actions for unlawful discrimination.

Va.Code § 2.1–725. In sum, count two seems to run afoul of Virginia's employment at-will doctrine.

5. Again, as in count two, the Court does not reach the merits of count three, but notes the likelihood that this count would not survive a merits attack. The tort of intentional infliction of emotional distress in Virginia requires proof of (1) intentional or reckless conduct, (2) that is outrageous and intolerable, offending generally accepted standards of decency, (3) and that causes (4) severe emotional distress. *See Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va.1974). Here, plaintiffs allege, in substance, that defen-

dants discharged them while knowing of Jody Nicol's pregnancy and the Nicols' financial situation, and that each plaintiff suffered emotional distress from the discharge of the other. These allegations fail to supply facts sufficient to satisfy the second prong of *Womack*. Simply put, the alleged conduct is not "outrageous". While the term "outrageous" is not susceptible to precise definition, it is generally true that "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community". Restatement (Second) of Torts § 46, comment d; *see also Gaiters v. Lynn*, 831 F.2d 51, 52–53 (4th Cir.1987) (whether conduct is sufficiently outrageous is in the first instance a question of law for the court).

6. In the alternative, the Court grants summary judgment for defendants on the remainder of count four. *See infra* Part II(C).

7. Also pertinent to this case is then-Judge Scalia's comment that "a plaintiff should not be permitted to 'pyramid her possible recovery' by 'casting and recasting the same basic facts in a number of different ways to sustain allegedly different claims.'" *Bouchet*, 730 F.2d at 804 (quoting *Clark v. World Airways*, 24 FEP Cas. (BNA) 305, 307 n. 6, 1980 WL 271 (D.D.C.1980)).

distress all dealt with plaintiffs' demotion, "inevitable complications in matters of proof and concomitant clouding of issues" supported decision not to exercise pendent jurisdiction). Thus, counts four, five, six, and eight would require proof of facts unrelated to any of the defendants' alleged discrimination and exceed the scope of any sexually related conduct. The state claims also seek consequential, compensatory, and punitive damages, remedies different from and far exceeding the permissible Title VII remedy. *See Bouchet,* 730 F.2d at 805 ("great discrepancy" between the limited relief available under Title VII and "the much broader relief sought under [plaintiff's] state causes of action (full compensatory and punitive damages)" suggests that pendent claims might become the predominant element of the lawsuit). Finally, with the possible exception of count seven, all of plaintiffs' state claims bear little or no relationship to federal anti-discrimination policy. Accordingly, counts two through eight

are discretionarily dismissed without prejudice.[8]

## II. *Motion for Summary Judgment*

### A. *Failure to Name*

Defendants seek summary judgment for Imagematrix West, Welsh, Adams and Hobbs on count one on the ground that plaintiffs asserted no claim against them in the administrative process. Plaintiffs respond that the failure to name is harmless because all defendants share a common interest.

Plaintiffs' argument is persuasive. Title VII permits a plaintiff to file a discrimination action only "against the respondent named in the charge." 42 U.S.C. § 2000e–5(f)(1). But because EEOC charges are often filed by non-lawyer complainants, courts routinely construe the naming requirement liberally. *See Alvarado v. Board of Trustees of Montgomery Community College,* 848 F.2d 457, 460 (4th Cir.1988). Accordingly, several exceptions to the naming requirement have been recognized.

---

**8.** Defendants also contend that *Owen Equipment and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) added a third element to the *Gibbs* test for pendent jurisdiction when the Supreme Court stated that courts must examine the specific statute that confers jurisdiction over the federal claim to determine whether "Congress in [that statute] has ... expressly or by implication negated" the exercise of jurisdiction over the particular non-federal claim. *See* 437 U.S. at 373, 98 S.Ct. at 2402 (quoting *Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976)). Defendants argue that as applied to Title VII, *Owen* compels the conclusion that no state claims may properly be pendent. In support, they cite a series of district court cases holding that various procedural and substantive characteristics of Title VII implicitly negate the exercise of pendent jurisdiction over non-federal claims. *See* cases cited at 13B C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3567.1 (Supp.1991 n. 30.1).

These authorities are not controlling here. Nor are they convincing. Several courts of appeals explicitly have upheld the exercise of pendent jurisdiction in Title VII cases. *See, e.g., Jones v. Intermountain Power Project,* 794 F.2d 546 (10th Cir.1986) (trial court properly exercised discretion to hear pendent state claims for tortious interference with contract and breach

of employment contract; congressional inaction and other factors suggest that pendent claims are permissible under Title VII); *Phillips v. Smalley Maintenance Services, Inc.,* 711 F.2d 1524 (11th Cir.1983) (claims for battery and tortious invasion of privacy held properly pendent to Title VII claim for sexual harassment); *Meyer v. California and Hawaiian Sugar Co.,* 662 F.2d 637, 640 (9th Cir.1981) (district court did not abuse its discretion in granting summary judgment against a variety of state claims after granting summary judgment against Title VII claim); *see also Spencer v. General Electric Co.,* 894 F.2d 651, 654 (4th Cir.1990) (noting without disagreement that district court exercised pendent jurisdiction over claims for assault and battery and intentional infliction of emotional distress). Similarly, several district courts in this circuit, including this Court, have exercised pendent jurisdiction in Title VII cases. *See, e.g., White v. Federal Express Corp.,* 729 F.Supp. 1536 (E.D.Va.1990) (pendent jurisdiction exercised over claims for breach of contract and wrongful discharge); *Glezos v. Amalfi Ristorante Italiano, Inc.,* 651 F.Supp. 1271 (D.Md.1987) (concluding that Congress did not intend to negate pendent jurisdiction in cases arising under Title VII); *Frykberg v. State Farm Mut. Automobile Ins. Co.,* 557 F.Supp. 517 (W.D.N.C.1983). Accordingly, absent explicit direction from the Fourth Circuit or any other court of appeals, this Court is not prepared to

■ Whether plaintiffs intended to include Imagematrix West in the Title VII claim is unclear.[9] Nor does it seem to make any practical difference whether this party is included as a defendant; Imagematrix West does not appear to be a corporate entity separate from Imagematrix. In any event, the "identity" exception would be applicable to Imagematrix West. A defendant need not be named in the EEOC complaint when it is functionally identical to a named defendant. *See Alvarado*, 848 F.2d at 460 (board of trustees held identical to college); *Sedlacek v. Hach*, 752 F.2d 333 (8th Cir.1985) (corporation and subsidiary partnership held to be single employer). The record reflects that Imagematrix West is no more than a part or division of Imagematrix, a named defendant, and is governed by the same board and president. Accordingly, Imagematrix West, though not named in the EEOC charge, could be a proper defendant.

■ The naming requirement exception relevant to the individual defendants is the "identity of interests" exception. While apparently not yet formally adopted by the Fourth Circuit, this exception has been applied by this Court and by circuits elsewhere. *See Kouri v. Todd*, 743 F.Supp. 448 (E.D.Va.1990); *Mayo v. Questech, Inc.*, 727 F.Supp. 1007 (E.D.Va.1989) (individual corporate directors were proper defendants notwithstanding that EEOC charge named only corporation); *see also Sedlacek; Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc.*, 702 F.2d 857, 860 (10th Cir.1983). To determine substantial identity, this Court adopted the balancing test enunciated by the Third Circuit in *Glus v. G.C. Murphy Co.*, 562 F.2d 880 (1977). *See Mayo*, 727 F.Supp. at 1011. The test consists of four factors:

1. Whether the role of the unnamed party could, through reasonable effort by the complainant, be ascertained at the time of the filing of the EEOC complaint;

2. Whether under the circumstances, the interests of the named party are so similar to the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;

3. Whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interest of the unnamed party.

4. Whether the unnamed party has in some way represented to the complainant that his relationship with the complainant is to be through the named party.

*See* 562 F.2d at 888.

Defendants argue that plaintiffs fail the first *Glus* factor because they knew the identities of the individual defendants and their roles at the time of the EEOC complaint, yet failed to name them. This factor, however, is outweighed by the second and third *Glus* factors, which favor plaintiffs. *See Mayo*, 727 F.Supp. at 1011 (second and third prongs of *Glus* are the most important). To begin with,

> it is readily apparent that the interests of the company and the director defendants in the subject matter of the EEOC complaint were so essentially similar that failure to name the director defendants in the EEOC complaint had no effect on the statutory goals of obtaining voluntary conciliation and compliance.

*Mayo*, 727 F.Supp. at 1012. In short, Hobbs, Adams, and Welsh have a significant identity of interests with Eggleston

---

hold that pendent jurisdiction may never be proper in the Title VII context. *See also Hladki v. Jeffrey's Consol. Ltd.*, 652 F.Supp. 388, 395 n. 15 (E.D.N.Y.1987) (where court declined pendent jurisdiction on other grounds, it was unnecessary to decide whether Title VII negates the exercise of pendent jurisdiction).

**9.** Count one is styled as directed "against all defendants." Yet the narrative portion of the count does not mention Imagematrix West. Consistent with this omission (but not with the style of count one), plaintiffs' memorandum in opposition to summary judgment states that count one is directed against all defendants except Imagematrix West.

and Imagematrix.[10] Nor can Hobbs, Adams, or Welsh claim actual prejudice from their failure to be included in the EEOC proceedings. As directors of Imagematrix these defendants undoubtedly received adequate, actual notice of the administrative proceedings. Moreover, the record reflects that plaintiffs received a right to sue letter before any formal conciliation efforts took place. Thus, failure to name these individuals played no role in denying them the opportunity to participate in the conciliation process. *See also Sedlacek*, 752 F.2d at 336–37 (Title VII defendants do not have a right to EEOC conciliation attempts). In sum, because the interests of the named and unnamed parties are substantially similar and there is no demonstrable prejudice to the unnamed parties, the naming requirement does not bar plaintiffs' suit against the unnamed parties.

### B. *Scope of EEOC Charge*

█ Defendants seek summary judgment against Jody Nicol's allegations of sexual harassment and hostile work environment in count one on the ground that no such claims were raised in her administrative actions. They note that plaintiffs' EEOC charge, Department of Labor complaint, and complaint to the Fairfax County Human Rights Commission each contained the same narrative statement of facts. This narrative states in relevant part:

> [W]hen in mid–1989 Ms. Nicol notified respondent Mr. Michael Eggleston, President of Imagematrix, that she hoped to start a family, he expressed concern that she might become less dedicated to her work. Ms. Nicol assured him, however, that children would not interfere with her employment at Imagematrix.
>
> \*   \*   \*   \*   \*   \*
>
> On October 3, 1989, Ms. Nicol informed Mr. Eggleston that she believed she was pregnant. Mr. Eggleston's response was

to order her to submit, the very next day, to a blood test that could confirm the suspected pregnancy. Shortly after Ms. Nicol confirmed to Mr. Eggleston that she was pregnant, he, without any prior notice, terminated Ms. Nicol's employment on November 15, 1989. Mr. Eggleston subsequently discharged Ms. Nicol's husband.

> Ms. Nicol's termination constitutes discrimination based on sex and pregnancy in violation of law.

Nowhere in this narrative is there any reference to the sexual harassment or hostile environment claims now asserted in count one. From this, defendants argue that to permit such claims now would be unfair. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989) ("allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charges, as surely as would an initial failure to file a timely EEOC charge.") (quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir.1985)); *see also* 4 J. Cook & J. Sobieski, Civil Rights Actions ¶ 21.20[B] at 21–243 (hereafter "Civil Rights Actions").

█ Defendants' argument is persuasive. To begin with, it is established that "the crucial element of a charge of discrimination is the *factual* statement contained therein." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 462 (5th Cir. 1970) (emphasis in original). *See also* Civil Rights Actions ¶ 21.20[B] at 21–246 ("In construing a charge, the crucial element is the complainant's statement of the facts constituting the alleged unlawful employment practice."). The next step is to determine the permissible scope of the factual

---

**10.** In particular, the complaint alleges that as directors of Imagemaxtrix, Adams, Hobbs and Welsh each voted to discharge plaintiffs. The Court is sensitive, however, to the fact that the interests of the individual defendants and Imagematrix may not be fully congruent. For ex-

ample, had plaintiffs' allegations proved true in the EEOC proceedings, a conciliation agreement might have required Imagematrix to discipline or even terminate Eggleston or other individual defendants. *See Kouri v. Todd*, 743 F.Supp. at 452.

allegations. In the words of the Fourth Circuit,

> the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination.

*Chisholm v. United States Postal Service,* 665 F.2d 482, 491 (1981); *see also EEOC v. General Electric Co.,* 532 F.2d 359, 368 (4th Cir.1976) (EEOC's "judicial suit may be as broad as the facts developed in a reasonable investigation of the charge will warrant"). Put differently, claims and bases of discrimination set forth in a Title VII complaint "are cognizable as long as they are like or reasonably related to the allegations of the charge and grow out of such allegations." Civil Rights Actions ¶ 21.20[B] at 21–246. *See also White v. Federal Express Corp.,* 729 F.Supp. at 1553 (citing *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973)). Thus, a claim omitted from the administrative complaint or charge may nonetheless be pursued in a Title VII suit if the omitted claim is reasonably related to the allegations and claims in the administrative charge or, if disclosed, the omitted claim could reasonably be expected to follow from the administrative investigation based on the deficient administrative charge.[11]

Measured against this standard and given plaintiffs' narrative EEOC charge, the Court concludes that plaintiffs' claims of sexual harassment and a sexually hostile work environment are beyond the scope of the EEOC charge and any reasonable investigation that would follow. Nothing in the charge narrative compels or even invites a finding of anything other than sex discrimination based on pregnancy. The narrative makes no reference to the general work environment at Imagematrix and includes no facts that would suggest sexual harassment of non-pregnant women or women other than Jody Nicol. One or more of the defendants may, as plaintiffs allege, have harbored some animus against pregnant women. It does not follow, however, that an employer prejudiced against pregnant women will necessarily commit acts of sexual harassment against pregnant or non-pregnant women, or that the employer will create a work environment that is hostile to women who are not pregnant. Thus, broad, general allegations of sexual harassment and hostile work environment cannot survive threshhold attack in court where, as here, the represented claimant filed an EEOC complaint alleging only pregnancy discrimination.

■ Other courts have reached similar results in analogous circumstances. They have ruled that a charge of sex discrimination for failure to promote, discharge, or some other specific employment decision was insufficient to support a more broadly-based Title VII action attacking personnel policies and practices respecting advancement opportunities for women.[12] Yet plain-

---

11. Neither test—reasonable relation or reasonable expectation as to the scope of the administrative investigation—is entirely satisfactory. Both are, in some degree, question-begging. Courts are left to speculate as to what might amount to a reasonable relationship and what the EEOC might or might not discover in the course of an investigation. Implicit in the results of a number of cases, see *infra* note 11, is a more bright line test that would be more helpful to courts and litigants; namely that where, as here, the EEOC charge alleges a particular category of discrimination (e.g., sexual harassment, pregnancy discrimination, or racial discrimination), allegations of different types of discrimination in the civil complaint will be considered *per se* not reasonably related unless the new allegations are either implicit in the EEOC charge or could be inferred from the facts alleged in the charge.

12. *See Torriero v. Olin Corp.,* 684 F.Supp. 1165, 1170 (S.D.N.Y.1988) (sexual harassment claim not cognizable where EEOC charge alleged sex discrimination from promotion denial and termination); *Bartha v. Service Sys. Corp.,* 44 FEP Cas. (BNA) 1764, 1987 WL 15332 (W.D.N.Y. 1987) (Title VII action alleging sexual harassment not reasonably related to charge of sex discrimination in pay, terms and conditions of employment, and discharge); *Miller v. Walker Div. of Butler Mfg. Co.,* 577 F.Supp. 948, 951 (S.D.W.Va.1984) (sex discrimination claims regarding salary, promotions, and equal treatment rejected where EEOC charge alleged sex discrimination in discharge); *see also Baltzer v.*

tiffs, in an effort to avoid this result, argue unconvincingly that all of their Title VII allegations are related because they stem from the same "root source," namely defendants' animus towards women.[13] This argument unjustifiably equates an animus against pregnancy or pregnant women with a broader animus against women generally. Were the Court to accept plaintiffs' argument in this respect, it would effectively nullify the requirement that the claims asserted in court be essentially those presented to the administrative body. Accordingly, partial summary judgment against plaintiffs' allegations of sexual harassment and hostile work environment is warranted.[14]

## C. Count Four

Pendent jurisdiction analysis led to count four's dismissal. But portions of the count, those alleging breach of contract based on the employment handbook and those seeking accrued vacation pay, also deserve dismissal on the merits.

### 1. Breach of Employment Contract (Handbook)

■ Count four alleges, *inter alia*, that plaintiffs' discharge constituted a breach of their employment contracts, the terms of which were embodied in Imagematrix's

*City of Sun Prairie/Police Dept.,* 725 F.Supp. 1008, 1019 (W.D.Wis.1989) (allegation of discriminatory restrictions on police officers while on light duty status during pregnancy not reasonably related to administrative charge of sexual harassment, hostile environment, and discrimination in terms and conditions of employment); *Sherman v. Standard Rate Data Serv., Inc.,* 709 F.Supp. 1433, 1442 (N.D.Ill.1989) (suit alleging retaliatory discharge not reasonably related to EEOC charge of sex discrimination); *Bennett v. New York City Dept. of Corrections,* 705 F.Supp. 979, 982 (S.D.N.Y.1989) (allegation of race discrimination in failure to train not reasonably related to charge of sexual and racial harassment); *Carrillo v. Illinois Bell Tel. Co.,* 538 F.Supp. 793, 798 (N.D.Ill.1982) (Title VII challenge to maternity leave policy stricken as beyond the scope of EEOC charge alleging sex and pregnancy discrimination in demotion and discharge); *cf. Willis v. Merck & Co.,* 36 FEP Cas. (BNA) 39, 1984 WL 48910 (W.D.Va.1984) (claims of discrimination in compensation, terms, conditions, and privileges of employment not allowed where EEOC charge expressly limited to discharge), *aff'd,* 762 F.2d 1001 (4th Cir.1985) (table affirmance).

**13.** Plaintiffs' reliance on the "root source" language of *General Electric,* 532 F.2d at 368–69, is misplaced. That case is inapposite in two respects. First, the Fourth Circuit there held that while the administrative charges claimed racial discrimination, the EEOC could also make a "reasonable cause" determination of sex discrimination because the "instrument or method of [the] claimed discrimination in both the racial and sex claims" was the same, namely the employer's use of specific pre-employment tests. *See id.* at 369. In addition, the new sex discrimination claim was made obvious by actual evidence in the form of the employer's own voluntary production of the tests. *See id.* at 368–69. By contrast, in this case plaintiffs cannot point

to any instrument or method to link their claims of sexual harassment and hostile work environment to the charge of pregnancy discrimination. Instead they merely speculate that all of defendants' alleged conduct was motivated by the same animus. *General Electric* is also distinguishable because the administrative charge in that case explicitly referred to the pre-employment tests that formed the basis for the subsequent claim of sex discrimination. *See id.* at 368. In this case, however, nothing in plaintiffs' EEOC charge provides a foundation for an administrative inquiry into instances of sexual harassment or the hostile nature of the work environment.

**14.** The limited administrative investigation that occurred in this case lends some support to this conclusion. The record reflects that the FCHRC investigator interviewed three current or former female employees of Imagematrix by telephone. The transcripts of these conversations show questions and responses relevant only to pregnancy, discharge, and the witnesses' interactions with plaintiffs; no mention is made of any more general sexual harassment of female employees. While this record is relevant, the Court notes that it is not dispositive. *See Schnellbaecher,* 887 F.2d at 127 (investigation "may help define the scope of the charge, [but] it is primarily the charge to which we look in determining whether the scope requirement is satisfied"); Civil Rights Actions ¶ 21.20[B] at 21–248 (EEOC investigation may help justify Title VII action encompassing acts not alleged in EEOC charge, but actual content of investigation does not set the outer limit of the suit). Still, in the words of the Seventh Circuit, "the investigation in the instant case was insufficiently broad to put the defendants on notice that the plaintiffs intended to file a complaint alleging" sexual harassment and a hostile work environment. *See Schnellbaecher,* 887 F.2d at 128.

Employee Handbook. More particularly, plaintiffs point to the fact that the handbook contains statements of policy against employment discrimination. Defendants seek summary judgment as to this aspect of the count on the ground that the Imagematrix handbook makes clear that plaintiffs were at-will employees, so their discharge cannot constitute a breach of employment contract.

■ Defendants' argument is convincing. The Imagematrix handbook states unequivocally that "[t]he relationship between ImageMatrix and its employees is at-will and may be terminated by either party at any time." This statement is dispositive. "Where an employee manual provides that an employee may be dismissed at the discretion of the employer, '[a] clearer expression of intent to create at-will employment can hardly be imagined.'" *Sullivan v. Snap–On Tools Corp.*, 708 F.Supp. 750, 753 (E.D.Va.1989) (quoting *Miller v. SEVAMP, Inc.*, 362 S.E.2d 915, 918 (Va. 1987)), *aff'd*, 896 F.2d 547 (4th Cir.1990) (table affirmance). In *Sullivan*, the court found that disciplinary procedures in an employee handbook did not imply that the employer could discharge an employee only for just cause. Here, similarly, "[g]laringly absent is any enumeration of the grounds for dismissal with cause and there is no mention of termination with cause." *Id.* at 753. None of plaintiffs' arguments persuasively rebut the presumption of at-will employment or the reasoning of *Sullivan*. None of the other cited passages of the handbook fairly permit the inference of a fixed period of employment. A general statement of policy to abide by federal law (*e.g.*, Title VII) cannot reasonably be construed as a deviation from at-will employment. Nor do plaintiffs' cited statements regarding maternity leave and employment performance (the latter being contained in a section of the handbook concerning substance abuse) persuasively detract from the clear statement of at-will terms. Plaintiffs suggest the existence of a factual dispute as to inferences that could be drawn from the handbook, but they offer no facts in support aside from the handbook itself. Accordingly, because there is no genuine issue of material fact and plaintiffs' proof fails as to an essential element of the claim, see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986), the Court would grant summary judgment for defendants.

### 2. *Vacation Pay*

■ Defendants argue that Jody Nicol's claim for accrued vacation pay for the period April 11, 1988 through July 1, 1988 must fail in light of the "formal offer letter" dated July 5, 1988, in which Eggleston wrote to her that "Your effective full time start date will be July 1, 1988...." The complaint does not dispute the existence or authenticity of this letter, and in fact relies on other aspects of it. Nor do plaintiffs offer any facts to dispute the letter's contents. The fact that plaintiffs believed themselves to be full-time employees as of April 1988, absent supporting affidavits, is insufficient to withstand summary judgment. Accordingly, the Court would find that the claim for accrued vacation pay is meritless and deserves dismissal.

### III. *Motion for Sanctions*

■ Defendants move for sanctions on the ground that (i) plaintiffs' original complaint contained two meritless causes of action, and (ii) that plaintiffs' counsel misrepresented to the Court that no EEOC investigation had occurred in this case.

Defendants' arguments are not persuasive. The record reflects that plaintiffs' counsel engaged in some degree of reasonable investigation before filing the complaint. At this stage of the litigation, the Court cannot say that any of plaintiffs' claims, including those the Court has dismissed, are frivolous or not warranted by at least a good faith argument for the modification of existing law. In addition, there is no persuasive objective evidence that plaintiffs' counsel filed this action for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation. *See* Rule 11,

Fed.R.Civ.P.; *In Re Kunstler*, 914 F.2d 505, 518–19 (4th Cir.1990). Nor is the Court persuaded that the cited statements in plaintiffs' counsel's memorandum regarding the EEOC investigation were made in bad faith or with an intent to mislead the Court. Accordingly, defendant's motion must be denied.

An appropriate Order shall issue.