Michael A. HUNT, d/b/a Hunt's
Livestock, Plaintiff,

v.

UP NORTH PLASTICS, INC., Poly Amer-
ica, Inc., and Ag–Bag International,
Ltd., Defendants.

No. Civ. 4–96–22.

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 17, 1997.

Kent M. Williams, Dan Heldun, Heins, Mills & Olson, Minneapolis, MN, for plaintiff, Michael Hunt.

Frank R. Berman, Julie O'Brien, Law Office, Minneapolis MN, for defendants Up North Plastics, Inc., Poly America, Inc.

John D. French, Faegre & Benson, P.L.L.P., Minneapolis, MN, for defendant Ag–Bag International, Ltd.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COUNTS II AND III OF THE AMENDED COMPLAINT

TUNHEIM, District Judge.

Plaintiff Hunt is prosecuting this action on behalf of himself and a putative class consisting of all persons who purchased silage plastic products and/or polyethylene construction film ("construction film") from one or more of defendants Up North Plastics, Inc. ("Up North"), Poly America, Inc. ("Poly America"), and Ag–Bag International Ltd. ("Ag–Bag"), beginning as early as April 1990. In his Amended Complaint, plaintiff alleges that all three defendants conspired to fix prices and allocate customers of silage plastic products in violation of federal antitrust laws and that Up North and Poly America engaged in

deceptive and unlawful trade practices relating to construction film, in violation of Minnesota law.

Defendants have moved the Court to dismiss plaintiff's state-law claims for lack of subject matter jurisdiction. This motion came before the Court at a hearing on September 12, 1997.[1] For the reasons set forth below, defendants' motion is granted.

## BACKGROUND

Up North and Poly America both produce and sell construction film, a black plastic material which is used to shield exposed construction sites from the elements, as a vapor barrier in construction, for weed terrain control in landscaping, and for other similar uses. Up North and Ag–Bag both produce and sell silage plastic products used for, among other things, the storage of livestock feed or grain. Ag–Bag does not produce or sell construction film.

Plaintiff alleges he purchased both products. He filed his original Complaint on January 8, 1996, purporting to represent a class consisting of all persons who purchased silage bags from Up North or Ag–Bag and all persons who purchased construction film from Defendants Up North or Poly–America from at least April 1990 until January 28, 1996. He asserted a claim for violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, against Up North and Ag–Bag, alleging said defendants conspired to fix prices by fixing sales quotas. He also asserted a Sherman Act claim against Up North and Poly America, alleging these defendants conspired to fix prices of construction film. In the alternative, plaintiff pleaded that if Up North and Poly America are found not to be separate entities capable of conspiring to fix prices under the Sherman Act, they have deceptively held themselves out as competitors in violation of Minnesota's Unlawful Trade Practices Act, Minn.Stat. §§ 325D.09 *et seq.* and 325D.43 *et seq.*

Defendants moved to dismiss the Complaint, or in the alternative, for a more definite statement of allegations. On March 31, 1997, this Court granted defendants' motion for a more definite statement, ordered plaintiff to file an Amended Complaint, and denied defendants' motion in all other respects.

In so holding, this Court noted that related corporations that are either parent and wholly owned subsidiary or otherwise constitute a "single enterprise" are not capable, as a matter of law, of conspiring with each other under Section 1 of the Sherman Act. Because it was unable to determine from the face of the original complaint whether Up North and Poly America are such related entities, this Court refused to dismiss the antitrust claim against them at that early stage in the proceedings. This Court did admonish plaintiff, however, that if he "is at this time satisfied that Up North and Poly America are incapable of conspiring, [he] should omit the antitrust claim against them from the amended complaint."

This Court also tentatively rejected Ag–Bag's argument that the silage bag claim should not be joined with the claims against the other defendants regarding construction film. Nevertheless, this Court made clear that severance ultimately may become appropriate, and denied the motion to sever "without prejudice to reconsidering this matter upon a motion after the close of discovery."

Finally, this Court refused to decline to exercise supplemental jurisdiction over plaintiff's state-law claims against Up North and Poly America. This Court reasoned that none of the conditions set forth in 28 U.S.C. § 1367(c) for discretionary dismissal of otherwise proper supplemental state-law claims were met at that time.

On April 14, 1997, plaintiff filed an Amended Complaint. The Amended Complaint contains substantially the same class allegations as the original Complaint except that plaintiff no longer alleges a federal antitrust claim

---

1. Two other motions were argued at this hearing. In a Memorandum Opinion and Order dated September 30, 1997, the Court denied the motion of Defendants Up North and Poly America to dismiss, or in the alternative, to disqualify plaintiff's counsel and suppress evidence and testimony. The other motion remains under advisement. Except to the extent plaintiff's state-law claims are dismissed, nothing herein shall be construed to affect the Court's disposition of the remaining motion.

against Up North and Poly America relating to construction film. Plaintiff now admits that Up North and Poly America are commonly owned. Thus, the Amended Complaint contains a federal antitrust claim against all defendants relating to silage plastic products (Count I) and state-law claims against Up North and Poly America alleging deceptive and unlawful trade practices against Up North and Poly America relating to construction film (Counts II and III). The only alleged basis for jurisdiction over these two state-law counts is 28 U.S.C. § 1367.[2]

On May 5, 1997, Up North and Poly America answered Count I of the Amended Complaint and moved to dismiss Counts II and III for lack of supplemental jurisdiction under 28 U.S.C. § 1367(a). Ag–Bag later joined in this motion.

## ANALYSIS

■ Congress codified federal courts' jurisdiction to hear "pendent" or "supplemental" state-law claims under 28 U.S.C. § 1367. Subsection (a) of this statute provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

This section codifies the test for pendent jurisdiction set forth in *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See, e.g.,* 13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3567.3, at 53 (Supp.1997). Under *Gibbs,* a state claim is sufficiently related to a federal claim to constitute the same case or controversy if both claims derive from a

"common nucleus of operative fact." 383 U.S. at 725, 86 S.Ct. at 1138; *see Southern Council of Indus. Workers v. Ford,* 83 F.3d 966, 969 (8th Cir.1996).

The federal courts have not defined clearly the meaning of the "common nucleus of operative fact" standard. Some courts, including a district court in the Eighth Circuit, have indicated that a "loose factual connection" between the claims is usually sufficient to support supplemental jurisdiction. *See, e.g., Travelers Ins. Co. v. Intraco, Inc.,* 163 F.R.D. 554, 557 (S.D.Iowa 1995); *Nicol v. Imagematrix, Inc.,* 767 F.Supp. 744, 748 (E.D.Va.1991) (stating many courts apply this standard). However, such phraseology is no less nebulous than the language in *Gibbs* and provides no guidance for how a court is to determine whether there is an adequate factual connection between claims in any given case. *See Blue Dane Simmental Corp. v. American Simmental Ass'n,* 952 F.Supp. 1399, 1408 n. 5 (D.Neb.1997) ("[W]ords like 'loose factual connection' provide little guidance as to what constitutes a *sufficient* connection."); *see also Lyon v. Whisman,* 45 F.3d 758, 760–762 (3rd Cir. 1995) (stating that this determination must be made on a case-by-case basis and pointing out that many courts have rejected the "loose nexus" test).

■ A more useful approach, and one that conforms to the way courts have actually applied the *Gibbs* standard, is to determine whether there is, at minimum, a discernable overlap between the operative facts underlying the federal claims and those underlying the appended state claims. *See, e.g., Lyon,* 45 F.3d at 760–61 (stating that the inquiry is whether the federal and state claims are merely alternative theories of recovery based on the same acts); *Blue Dane,* 952 F.Supp. at 1408 n. 5 ("Using the *Gibbs* formulation, the ultimate inquiry is whether the facts in the main claim and counterclaim are both 'common' and 'operative.'"); *Salei v. Boardwalk Regency Corp.,* 913 F.Supp. 993, 999 (E.D.Mich.1996) (finding no supplemental

**2.** It is undisputed that the parties are not completely diverse and that Counts II and III raise no federal question.

jurisdiction where claims were based on separate operative facts); *Nicol,* 767 F.Supp. at 748 (inquiring whether the state and federal claims are "separately maintainable and determinable without any reference to the facts alleged ... with regard to the other count.") (quoting *Hales v. Winn–Dixie Stores, Inc.,* 500 F.2d 836, 848 (4th Cir.1974)).[3]

■ Defendants argue that plaintiff's claims do not meet this standard because the facts relevant to the resolution of the federal claim are distinct and separate from the facts that bear on the state claims. The Court agrees. The facts underlying plaintiff's federal claim alleging a conspiracy between the defendants to fix silage product prices do not also tend to support or prove its state-law claims against Up North and Poly'America regarding construction film. Plaintiff's federal and state claims involve different products (silage plastic products versus construction film), a different defendant (Ag–Bag is only joined in the federal claim), and different alleged misconduct (conspiring to fix prices versus concealing certain facts). The only common fact between the claims is the alleged involvement of principals and agents of Up North and Poly America in both schemes. That the claims involve one or more common actors is, however, insufficient, without more, to create a common nucleus of operative fact. *See, e.g., Council of Unit Owners of Wisp Condominium, Inc. v. Recreational Indus., Inc.,* 793 F.Supp. 120, 122 (D.Md.1992) ("Although this claim is part of an ongoing, nasty dispute between the parties, this Court does not think it is part of the same Article III case or controversy...."); *Nicol,* 767 F.Supp. at 748 (federal sex discrimination claims and state-law contract claims found to be distinct although both were directed at same employer).

Plaintiff contends this Court has jurisdiction over his state-law claims because these claims and his federal claim address schemes to artificially inflate prices of similar products which are used for similar purposes, made by at least one common manufacturer (Up North), and were purchased by some of the same buyers during the same time frame. Boiled down, plaintiff's argument merely draws parallels between the products at issue in each claim and the ultimate goal (artificially inflated prices) of defendants' alleged schemes. Such broad similarities between the schemes do not, however, establish that there are common facts underlying each claim. *See, e.g., Salei,* 913 F.Supp. at 998–99 (finding "upon closer inspection" that the state and federal claims did not share the same operative facts, even though the claims "appear to be related in a broad or causal sense"); *see also Council of Unit Owners,* 793 F.Supp. at 122–23 ("The defendant's alleged present attempts to compete with the plaintiff are simply not 'so related to' the plaintiff's allegations of *anti-competitive* activity at the Wisp Condominium site as to satisfy § 1367(a)....")

Plaintiff points to no facts that support both the existence of a conspiracy among competitors to fix silage products prices and a scheme to keep the common ownership of Up North and Poly America a secret from those purchasing construction film. The facts underlying these state and federal claims therefore do not overlap sufficiently with those underlying the alleged scheme between Up North and Ag–Bag to form the same case or controversy. Plaintiff's state-law claims must be dismissed for want of jurisdiction.

### ORDER

Accordingly, based on the above, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' motion to dismiss Counts II and III of the Amended Complaint [Docket No. 91] is

---

**3.** This approach also appears to be consistent with the test the Eighth Circuit utilizes for determining whether a counterclaim arises out of the same "*transaction or occurrence*" as the original claim under Fed.R.Civ.P. 13(a). The court analyzes whether the issues of fact and law raised by the claim and counterclaim are largely the same, whether res judicata would bar a subsequent suit on the counterclaim, whether substantially the same evidence will support or refute the plaintiff's claim and the counterclaim, and whether there is a logical relationship between the claims. *See, e.g., Cochrane v. Iowa Beef Processors, Inc.,* 596 F.2d 254, 264 (8th Cir.), *cert. denied,* 442 U.S. 921, 99 S.Ct. 2848, 61 L.Ed.2d 290 (1979).

GRANTED, and these counts are DIS-MISSED.